VICKI J. GANS, APPELLANT, V.
PARKVIEW PLAZA PARTNERSHIP ET AL., APPELLEES.

571 N.W. 2d 261

Filed December 5, 1997.    No. S-95-699.

T.J. Hallinan, of Cobb & Hallinan, P.C., for appellant.

J. Joseph McQuillan, Jon J. Puk, and Scott A. Calkins, of Walentine, O'Toole, McQuillan & Gordon, for appellees Huffman & Associates and Overland Managment Co.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, and McCORMACK, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

The plaintiff-appellant, Vicki J. Gans, alleges she sustained damages as the result of a sexual assault perpetrated upon her at her place of employment with the defendant-appellee Avon Products, Inc., as the proximate result of the negligence of the defendants-appellees Parkview Plaza Partnership and Overland Management Co., and for which Avon has paid her certain subrogated workers' compensation benefits. The district court sustained the summary judgment motion filed by Parkview and Overland, thereby dismissing Gans' action. Gans appealed to the Nebraska Court of Appeals, asserting, in summary, that the district court erred in concluding that Parkview and Overland owed her no duty and there thus existed no genuine issues of material fact. The Court of Appeals affirmed. See *Gans v. Huffman & Assocs.*, 97 NCA No. 14, case No. A-95-699 (not designated for permanent publication). Gans thereupon successfully petitioned for further review by this court. We now reverse the judgment of the Court of Appeals and remand the cause with directions.

## II. SCOPE OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Billups v. Troia, ante* p. 295, 570 N.W.2d 706 (1997); *Schendt v. Dewey*, 252 Neb. 979, 568 N.W.2d 210 (1997). To the extent questions of fact are involved, an appellate court, in reviewing a summary judgment, views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Gerdes v. Klindt, ante* p. 260, 570 N.W.2d 336 (1997); *Schendt, supra*; *Cunningham v. Prime Mover, Inc.*, 252 Neb. 899, 567 N.W.2d 178 (1997).

## III. FACTS

On January 25, 1988, Avon promoted Gans to the position of district manager, and she and three other district managers, Janet

Hylen, Cynthia Louise Sherwood, and Michael Knox, decided to lease office space together. In the fall of 1988, the four visited the Parkview office building in question, decided to rent space, and moved in sometime at the end of 1988 or the beginning of 1989. They initially occupied suites 5 and 6, but without signing a new lease, moved to suite 8 in May or June 1990.

In the spring of 1989, an engineering business at the office building was broken into, and computer equipment was stolen. As a result, the office building tenants pooled their resources and installed a security system, which included multiple motion sensors in the hallway and in various suites. The last person to leave the building at night turned the system on, and the first person to arrive the following morning disarmed the system. In order to hear when people entered the door to suite 8, the Avon managers hung a bell on the door.

Mary Ann Ross, an Avon sales representative who lived across the street from the office building, testified that "the area was not safe at night to be in." According to her, "[t]here had been rapes and different things going on in the area. There had been people breaking into people's cars at the apartment complex and things . . . ." Others testified that a sexual assault occurred in a parking lot one block away from the office building.

After the four Avon managers moved to suite 8 but before Gans was raped, Gans twice complained to the maintenance man at the office building, Edward Camden, about the lock on the door of suite 8, telling him that she and her comanagers were unable to turn the lock from the inside, that they sometimes worked in the office alone at night, and that they did not feel safe. On more than one occasion, Sherwood called Steven Huffman, the agent for Overland and part owner of the office building, and complained about the lock on the door of suite 8. Cathy Irving, an Avon manager, stated that the door was very difficult to lock from the inside because the key would hit the doorjamb as it turned. Janet Christline, another Avon manager, testified that the door to suite 8 was impossible to unlock from the inside because the metal doorframe prevented the key from turning. Ross testified that on several occasions she saw others unsuccessfully trying to lock the door from the inside, but had never seen anyone succeed. The lock was never repaired.

On December 3, 1990, Hylen left the office at 4:45 p.m., leaving Gans alone to place some telephone calls. An hour later, Gans heard the bell on the door ring and saw a man enter the office. She rose from her desk to greet him, whereupon he shoved Gans against a wall. He then beat and raped her.

Overland manages a number of properties. Huffman is employed by Overland and also has an ownership interest in each of the properties Overland manages. According to Huffman, Overland took care of the outside maintenance of the office building, such as the air conditioning and heating, and the tenants cared for the inside, such as painting, changing inside lights, and changing locks. When asked whether Overland ever changed the locks, Huffman responded that "[s]ometimes I'd do it as a favor, you know, for a tenant." Huffman testified that when the Avon managers moved into the office building, Overland changed the locks on their suites. Huffman also testified that when the managers asked to move into suite 8, he informed them that Overland would not make any improvements. Finally, Huffman testified that he had no knowledge of the sexual assault in a parking lot near the office building or any other criminal activity taking place at a nearby apartment building.

Camden, who worked under the direct supervision of Huffman, testified that he was involved in installing and replacing locks in the doors at the office building. He recalled replacing the lock cylinder on the door of suite 8 and stated at one point that he did not recall when he did so. Later, Camden testified that he installed new cylinders in the door when Avon moved to suite 8. According to him, when the managers moved to that suite, the door could not be locked from the inside, and he did not replace the inside cylinder. However, Camden never attempted to lock or unlock the door to suite 8 from the inside. He recalled that when he performed repair work in suite 8, someone complained to him about the lock, telling him that the door was difficult to open, but that no mention was made of the inability to turn the key from the inside. Finally, Camden testified that if a tenant had a problem with a lock, he fixed it.

Thomas E. Martin, a police officer who has done private security work, evaluated the functioning of the lock and lighting at the office building. In his opinion, the condition of the

lock in suite 8 presented an unreasonable risk of harm to Gans. He also testified that in his view the large apartment complex nearby would likely draw transient traffic and result in a higher incidence of crime. Martin further testified:

> The fact that it does lie at the end of a dead[-]end street poses a problem from the standpoint of passing traffic. It lends itself to the situation where it is out of the way and would probably present an easier target for somebody looking either to break in or, you know, to vandalize or to do any assaults.

According to Martin, replacing the inside lock to suite 8 with an operable thumb-turn lock would have cost approximately $12. Finally, Martin stated that "any non-violent crime can escalate into a violent situation when the perpetrator is confronted and such violent situations include sexual assault and homicides."

## IV. ANALYSIS

For actionable negligence to exist, there must be a legal duty on the part of the defendant to protect the plaintiff from injury, a failure to discharge that duty, and damage proximately resulting from such undischarged duty. *Erichsen v. No-Frills Supermarkets,* 246 Neb. 238, 518 N.W.2d 116 (1994). " ' " " '[D]uty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk. . . ." ' " *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.,* 248 Neb. 651, 658, 538 N.W.2d 732, 738 (1995). "The question of whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation." *Id.* Accord *S.I. v. Cutler,* 246 Neb. 739, 523 N.W.2d 242 (1994).

Although a landlord is not an insurer of a tenant's safety, a landlord has a duty to protect a tenant against the foreseeable criminal acts of third persons. *K.S.R. v. Novak & Sons, Inc.,* 225 Neb. 498, 406 N.W.2d 636 (1987); *C.S. v. Sophir,* 220 Neb. 51, 368 N.W.2d 444 (1985). Foreseeability is a factor in establishing a duty. *Anderson/Couvillon, supra; Merrick v. Thomas,* 246 Neb. 658, 522 N.W.2d 402 (1994). The question of foreseeability is a question of fact. *K.S.R., supra.*

We have addressed, in numerous cases, a landowner's duty to protect those allowed to be on the property against the criminal actions of third persons. The adjudication of this case requires a review of the most recent and relevant of those cases.

In *C.S., supra,* plaintiff, a tenant at defendant's apartment building, was sexually assaulted in the apartment's parking lot. Plaintiff alleged that defendant, after having actual knowledge of one prior sexual assault on the premises, the lack of proper lighting, and the overgrowth of the surrounding shrubbery, failed to provide adequate security measures and to warn tenants of the danger of sexual assault in the parking area. In affirming the district court's sustaining of defendant's demurrer, we noted:

> No cases were found which impose liability on a landlord based on a *single* prior criminal act perpetrated upon a tenant. That none were found appears consistent with Nebraska's position with reference to a similar class of individuals, business invitees. . . .
>
> . . . In *Harvey* [*v. Van Aelstyn,* 211 Neb. 607, 319 N.W.2d 725 (1982),] the court refused to impose liability on a tavern owner where a patron was assaulted by a third party who had become violent on the premises on a prior occasion. The foreseeability requirement necessary to impose liability was missing.
>
> Likewise, in the present case there would be no foreseeability, based on one prior assault, upon which to predicate liability.

(Emphasis in original.) 220 Neb. at 54, 368 N.W.2d at 447.

In *K.S.R., supra,* plaintiff alleged that defendant landlord failed to provide adequate security by failing to install a lock on the front door of her apartment and that, as a result, she was sexually assaulted in her apartment. The common areas to the complex were open to the public. The building manager was aware that the assailant had been caught several times masturbating in the building and that he had broken into a nearby apartment building and stood naked at the foot of a tenant's bed. Also, the manager was aware that defendant had lost 8 to 10 tenants as a result of the assailant's activities. Furthermore, the manager was aware that the assailant was seen masturbating in the laun-

dry room directly across from plaintiff's apartment 2 days prior to the sexual assault. A week prior to the sexual assault, plaintiff's door was kicked in, and the deadbolt lock was broken. Despite plaintiff's daily complaints to the apartment management, the manager did not take any steps to repair the lock until after the assault. The district court ruled that defendant had no duty to protect the tenants from the criminal activities of third parties. We reversed, observing that "[i]n the instant case repeated intrusions with related objectionable sexual conduct by the assailant were known to the landlord." 225 Neb. at 500, 406 N.W.2d at 638. After noting that questions of foreseeability, negligence, and proximate cause are questions for the trier of fact, we held that we could not state as a matter of law that the assault was not reasonably foreseeable.

In *Erichsen v. No-Frills Supermarkets,* 246 Neb. 238, 518 N.W.2d 116 (1994), plaintiff sustained injuries as a result of being a victim to an attempted purse-snatching in defendant's parking lot. Plaintiff alleged that on at least 10 prior occasions within a 16-month period prior to the assault on her, similar crimes, including theft, purse-snatching, and robbery, had been committed in defendant's parking lot or in surrounding premises. Plaintiff further alleged that defendant knew or should have known that based on the prior crimes, defendant's practice of maintaining fewer employees to assist customers to their vehicles increased the risk of criminal activity against them. Finally, plaintiff alleged that defendant had a duty to take steps to protect against such criminal activity or at least warn her of the risk. The district court sustained defendant's demurrer. In reversing, we wrote that when determining whether to impose upon a landlord a duty to protect against criminal activity, "[t]he question is one of foreseeability." 246 Neb. at 243, 518 N.W.2d at 120. We further observed that the prior criminal activity need not involve the same suspect to make further criminal acts reasonably foreseeable. Furthermore, "the allegation of many occasions of 'similar' criminal activity in one fairly contiguous area in a limited timespan may make further such acts sufficiently foreseeable to create a duty to a business invitee." *Id.* As for the duty then owed by a landlord to a business invitee, we quoted with approval the following:

"If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, *either generally* or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford reasonable protection."

(Emphasis in original.) *Id.* at 241, 518 N.W.2d at 119, quoting Restatement (Second) of Torts § 344 (1965). We also recalled our holdings in *C.S. v. Sophir*, 220 Neb. 51, 368 N.W.2d 444 (1985), and *Harvey v. Van Aelstyn*, 211 Neb. 607, 319 N.W.2d 725 (1982), and noted that we had "denied relief where [plaintiff] based his or her allegations of negligence on a single act of violence. In those cases, we held that one incident did not, under the facts presented in those cases, constitute sufficient notice to make the criminal acts sued upon reasonably foreseeable." *Erichsen*, 246 Neb. at 243, 518 N.W.2d at 120. Finally, citing various foreign jurisdictions, we wrote that "[c]riminal acts that occur near the premises in question give notice of the risk that crime may travel to the premises of the business owner." *Id.* at 244, 518 N.W.2d at 120.

In *S.I. v. Cutler*, 246 Neb. 739, 523 N.W.2d 242 (1994), plaintiff was assaulted at 8:30 a.m. in the elevator of the office building owned by defendant and at which she worked. Plaintiff alleged that a burglary had occurred in the building approximately 6 months earlier, that the assailant and others had assaulted or threatened other business invitees on other occasions, that defendant knew or should have known that the assailant had been standing in the building's entrance since 8 a.m. and had previously been ejected from the building by security personnel for loitering, and that the assailant had attacked patrons of the building several times prior to her attack. Plaintiff further alleged that defendant's security guard knew that the assailant had been spotted loitering around the building for 3 to 4 months and had been observed 3 or 4 days prior to her attack and that defendant had received complaints about the assailant's presence and the assaults he committed on the premises. We held that plaintiff's petition alleged a sufficient amount of criminal activity by the particular assailant to make further criminal acts by the assailant reasonably foreseeable.

Finally, in *Hulett v. Ranch Bowl of Omaha*, 251 Neb. 189, 556 N.W.2d 23 (1996), plaintiff, who was attending defendant's after-hours dance party at defendant's establishment, was attacked in a women's restroom by another patron using as a weapon a glass beer mug found in the restroom. According to a former employee, approximately three fights would occur each night he had worked the after-hours dance parties. Prior to each after-hours dance party, security personnel patted down each patron for weapons, and approximately 15 security personnel patrolled the inside of the establishment. We held the evidence was sufficient to allow a jury to conclude that the attack upon plaintiff was reasonably foreseeable and could have been prevented by defendant, reasoning:

> Giving [plaintiff] the benefit of all proper inferences adduced from the evidence, we cannot say that the attack on [her] was unforeseeable as a matter of law. The evidence adduced at trial clearly supports a jury verdict against [defendant] for failure to use reasonable care to protect [plaintiff]. [Defendant] recognized the importance of checking the restrooms for altercations or fights. Furthermore, [defendant's] security manager . . . acknowledged that glassware can be used as a dangerous weapon. This, coupled with the evidence establishing the routine existence of fights during the after-hours dances, was sufficient to allow a jury to conclude that the attack on [plaintiff] was, in fact, foreseeable and that [defendant] failed to effectively prevent it by either removing the glassware from the restrooms or providing adequate security personnel to patrol the restrooms for fights or altercations between patrons.

*Id.* at 195-96, 556 N.W.2d at 28. We again reiterated that the foreseeability of the assault on plaintiff was a question of fact for the jury.

The foregoing review establishes that while "[o]ne prior incident may not be sufficient to impose a duty upon the landowner," *S.I.*, 246 Neb. at 743, 523 N.W.2d at 245, the controlling question is whether, under the facts presented, one incident constitutes sufficient notice to make the criminal acts sued upon reasonably foreseeable, *Erichsen v. No-Frills Supermarkets,* 246 Neb. 238, 518 N.W.2d 116 (1994).

While liability is to be imposed only where there has been a history of criminal activity such as to make it foreseeable that such activity would occur in the future, *S.I., supra*, it does not necessarily follow that the prior similar criminal activity must have taken place at the premises; it is required only that the criminal act or acts occurring near the premises in question give notice of the risk that crime may travel to the premises of the business owner, *Erichsen, supra*. Thus, it is the totality of the circumstances, not solely the number or location of prior incidents, that must be considered in determining foreseeability. While the existence of only one prior crime will not always result in a finding of nonforeseeability as a matter of law, we agree with the observations of the Kansas Supreme Court in *Seibert v. Vic Regnier Builders, Inc.*, 253 Kan. 540, 856 P.2d 1332 (1993), namely, that in order to make the risk of attack foreseeable, the circumstances to be considered must have a direct relationship to the harm incurred. For example, if the area in question is located in a known high-crime area, that factor should be considered.

> For instance, one should not be able to open an all-night, poorly lit parking lot in a dangerous high crime area of an inner city with no security and have no legal foreseeability until after a substantial number of one's own patrons have fallen victim to violent crimes. Criminal activity in such circumstances is not only foreseeable but virtually inevitable.

*Id.* at 549, 856 P.2d at 1339.

In the instant case, there is no evidence that Parkview or Overland knew of any criminal activity in the area, other than the burglary at the office building. Neither is there any evidence that Parkview or Overland had constructive knowledge of any other criminal activity (constructive knowledge being knowledge which one would possess if, through the exercise of reasonable care, one would have known the relevant facts). See *McGinn v. City of Omaha,* 217 Neb. 579, 352 N.W.2d 545 (1984). Nor is there any evidence establishing that had Parkview or Overland exercised reasonable care, it would have known about other criminal activity in the area. However, in addition to knowing that in the spring of 1989, a burglary had

taken place at the office building, Parkview and Overland knew, or should have known, that the secluded location of the office building at the end of a dead-end street presented an easy target for criminal activity. Moreover, viewing the evidence most favorably to Gans, Parkview and Overland had actual knowledge that the lock to suite 8 could not be operated from the inside and that women occupied the suite alone at night. Notwithstanding that knowledge and notwithstanding that Camden repaired broken locks, nothing was done to make the lock to suite 8 operable from the inside.

On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Kime v. Hobbs*, 252 Neb. 407, 562 N.W.2d 705 (1997); *Vilcinskas v. Johnson*, 252 Neb. 292, 562 N.W.2d 57 (1997). Viewed in a light most favorable to Gans, the evidence presents genuine issues of material fact. A fact finder could find it foreseeable that an unwelcome stranger would gain entry to suite 8 at night through the unlockable door while the suite was occupied by a lone woman. This is precisely the kind of consequence that Gans foresaw and that Parkview and Overland should have foreseen. It must be remembered that the law does not require precision in foreseeing the exact hazard or consequence which happens; it is sufficient if what occurs is one of the kinds of consequences which might reasonably be foreseen. *Stodola v. Grunwald Mechanical Contractors*, 228 Neb. 301, 422 N.W.2d 341 (1988); *Brown v. Nebraska P.P. Dist.*, 209 Neb. 61, 306 N.W.2d 167 (1981). Stated another way, it suffices to charge a person with liability for a negligent act if some injury to another ought reasonably to have been foreseen as the probable result thereof by the ordinarily intelligent and prudent person under the same circumstances, even though the specific injury might not be foreseeable. *Gillotte v. Omaha Public Power Dist.*, 185 Neb. 296, 176 N.W.2d 24 (1970).

Since the risk reasonably to be perceived defines the duty to be obeyed, *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248 Neb. 651, 538 N.W.2d 732 (1995), we cannot state as a matter of law that the assault was not reasonably foreseeable. As a consequence, it cannot be said as a matter of law that Parkview and Overland owed no duty to Gans.

## V. JUDGMENT

Accordingly, as first noted in part I, the judgment of the Court of Appeals is reversed and the cause remanded thereto with the direction that it reverse the judgment of the district court and remand the cause to that court for further proceedings consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

STEPHAN, J., not participating.