JANE DOE, APPELLEE, V.
GUNNY'S LIMITED PARTNERSHIP, APPELLANT.
593 N.W. 2d 284

Filed April 9, 1999.    No. S-97-753.

John R. Douglas and Terry J. Grennan, of Cassem, Tierney, Adams, Gotch & Douglas, for appellant.

Elizabeth A. Govaerts, of Vincent M. Powers & Associates, for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

WRIGHT, J.

## NATURE OF CASE

Jane Doe was sexually assaulted in a parking garage owned by Gunny's Limited Partnership (Gunny's). Gunny's appeals from a jury verdict in favor of Doe, claiming, inter alia, that there was insufficient evidence of prior criminal activity to establish a duty on the part of Gunny's to protect Doe from being sexually assaulted.

## SCOPE OF REVIEW

With regard to the overruling of a motion for directed verdict made at the close of all the evidence, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, where an issue should be decided as a matter of law. *McWhirt v. Heavey*, 250 Neb. 536, 550 N.W.2d 327 (1996).

## FACTS

Gunny's is a limited partnership which owns real estate and a building located at the corner of 13th and Q Streets in Lincoln, Nebraska. The basement of the building contains a business operating as a bar, restaurant, and pool hall, which at the time of the incident was called Chesterfield, Bottomsley & Potts (Chesterfield's). The street level of the building is mall-like and contains two fast-food restaurants. Above this area is a multi-level parking garage serviced by an elevator located on the street level and flights of stairs which have an entrance located near an alley on the south side of the building.

On the night in question, Doe and a group of her friends arrived at Chesterfield's about midnight. At that time, Doe was a student at the University of Nebraska at Lincoln. While at the bar, a member of Doe's group began to feel ill, and Doe accompanied the woman outside so that she could get some fresh air. In order to exit Chesterfield's, the two women had to climb a flight of stairs and exit through the lobby of the building.

The lobby, which is part of the mall area, is located at street level. The interior of the mall is uniquely configured in a zigzag pattern with glass doors leading to 13th and Q Streets. When Doe passed through the lobby, she observed that one of the fast-food restaurants located in the mall was closed and that the employees of the other restaurant were closing for the evening. She also noticed a man standing in the lobby, whom she described as being white, thinly built, and wearing a white baseball cap.

After Doe and her friend exited the building, her friend vomited, and Doe returned to Chesterfield's to obtain water and a tissue. When Doe passed through the lobby this time, it was empty. After helping her friend, Doe returned to Chesterfield's and retrieved her purse. As Doe passed through the lobby again, a man stepped from behind a pillar, grabbed her by the arm, pointed a gun at her, and took her into the elevator.

Doe and her attacker exited the elevator on the fourth floor of the parking garage. There, the man forced Doe to remove her clothing and sexually assaulted her. Following the assault, the man permitted Doe to dress and returned her to the elevator. The man escaped via a nearby stairwell and has not been apprehended.

Doe sued Gunny's, alleging that it was negligent because it failed to use reasonable care to protect business visitors such as her from assaults by third parties. She alleged that she suffered damages as a direct and proximate cause of the negligence of Gunny's.

At trial, Jeanne Reesman, the property manager of Gunny's for 13 years, testified regarding security at the building. The lease between Chesterfield's and Gunny's contained a clause which stated that Gunny's would provide security for the premises for a monthly charge.

According to Reesman, prior to Doe's sexual assault, the owners of Chesterfield's had not complained about the security on the premises. She testified that neither Jan Gifford nor Kimberly Gifford, the owners of Chesterfield's, had ever reported to her that there were problems with transients or homeless persons in the building and that had she known transients were living in the building, she would have taken action. During cross-examination, Reesman admitted that she knew of incidents of vandalism involving broken glass and windows at the building, but she stated she did not know of any violent crimes which had been committed in the Gunny's building. Moreover, Reesman learned of the sexual assault only when she read about it in a newspaper article.

For a short period of time prior to 1991, Gunny's had employed a security guard to patrol the building from 9 p.m. to 1:30 a.m. daily. Gunny's stopped providing the security guard when it was discovered that the guard was spending most of his time talking to people in Chesterfield's. At trial, it was established that the security guard was dismissed at a time when the hourly fee to provide security personnel was about to increase.

At the time of the sexual assault, a security guard entered the building only between 9 and 9:30 p.m. to lock the back door, to walk through the lobby of the building, and to walk all floors of the parking garage. The guard returned at 1 a.m. to lock the building for the night. This guard did not know that Doe had been sexually assaulted on the premises because he was not present at the time of the assault.

According to Kimberly Gifford, when she first began managing Chesterfield's, the building had a security guard present in the lobby. Once the guard was no longer present in the lobby, the character of the building changed and homeless persons and transients began living in the building. Gifford claimed that she had complained to Reesman about the lack of security in the building and had informed Reesman that she wanted a security guard in the lobby.

Kimberly Gifford wanted more security in the building because she felt that it was necessary to ensure the safety of her patrons and employees. Kimberly Gifford did not allow her

female employees to walk out of the building at night unless accompanied by a male because she did not feel that it was safe. She testified that the building did not seem safe and that it was "just kind of eerie." She thought that a transient named "Mike" was actually living in the stairwells of the building. The stairwells themselves were described as dirty, disgusting, and full of urine. Kimberly Gifford's concerns with regard to security began when this transient started to live in the stairwells and began to frequent the public restrooms in the basement.

Barbara Felcher, an employee of Chesterfield's, testified that Reesman had made a statement after the sexual assault that it would be too expensive to have security in the building. Felcher stated that Reesman said, "[I]f there was [security], then any damage or injury [Gunny's] would be liable for . . . ."

Robert Dudash, a private investigator who surveyed the security of the Gunny's building, testified that had a security guard been present in the lobby, the sexual assault would not have occurred. Dudash cited the physical layout of the street level as one of the bases for his concern. Dudash also testified that the street level contained various "nooks and crannies" where an unwanted person could conceal himself.

Doe called Leann Remmers-Hammer, a records supervisor for the Lincoln Police Department, to lay foundation for the admission of exhibit 21. The exhibit was a data compilation of recorded dispatch information for calls requesting that police be sent to an eight-block area around the Gunny's building. Doe's offer of exhibit 21 was denied.

Prior to submission of the case to the jury, Gunny's made a motion for a directed verdict. The motion was overruled.

At the conclusion of the trial, the jury returned a verdict for Doe in the amount of $204,000. Following the verdict, Gunny's moved for judgment notwithstanding the verdict or, in the alternative, a new trial. Gunny's asserted that Doe had failed to introduce evidence of prior criminal activity in the building and that such evidence was necessary to establish the duty of Gunny's to protect Doe from an attack by a third party. The trial court overruled the motions, and Gunny's filed a timely notice of appeal. We subsequently moved the case to our docket.

## ASSIGNMENTS OF ERROR

Gunny's assigns and argues essentially four positions. Gunny's assigns as error that the trial court (1) should have directed a verdict at the close of the evidence or should have entered a judgment notwithstanding the verdict in its favor; (2) erred in admitting the testimony of Doe's expert that the presence of a security guard would have prevented the sexual assault; (3) erred in admitting a statement to the effect that if Gunny's had a security guard, then Gunny's would be liable for any damages, which statement was a legal conclusion and therefore inadmissible; and (4) erred by not giving all of the jury instructions proposed by Gunny's.

## ANALYSIS

We first address the claim that Doe failed to offer any evidence of prior criminal activity at or near the Gunny's building and therefore failed to establish a duty on the part of Gunny's to protect Doe from the criminal acts of third parties. Gunny's argues that because Doe failed to establish that Gunny's owed her a duty of care, the trial court erred in not directing a verdict or granting a judgment notwithstanding the verdict in favor of Gunny's.

When a motion for directed verdict made at the close of all the evidence is overruled by the trial court, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the issue and the issue should be decided as a matter of law. *Tapp v. Blackmore Ranch*, 254 Neb. 40, 575 N.W.2d 341 (1998). Thus, we review the evidence to see whether the trial court erred by not granting a directed verdict at the close of all the evidence or a judgment notwithstanding the verdict.

A brief discussion of the importance of evidence of prior criminal activity is warranted insofar as it relates to the issue of the duty of a landlord to protect persons from the criminal acts of third parties. For actual negligence to exist, there must be a legal duty on the part of the defendant to protect the plaintiff from injury, a failure to discharge that duty, and damage proximately resulting from such undischarged duty. *Gans v. Parkview*

*Plaza Partnership*, 253 Neb. 373, 571 N.W.2d 261 (1997); *Erichsen v. No-Frills Supermarkets*, 246 Neb. 238, 518 N.W.2d 116 (1994). The duty in a negligence case is to conform to the legal standard of reasonable conduct in the light of the apparent risk. *Gans v. Parkview Plaza Partnership, supra*; *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248 Neb. 651, 538 N.W.2d 732 (1995). The question of whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Gans v. Parkview Plaza Partnership, supra*; *S.I. v. Cutler*, 246 Neb. 739, 523 N.W.2d 242 (1994).

Although a landlord is not an insurer of a tenant's safety, the landlord has a duty to protect the tenant against the foreseeable criminal acts of third persons. *Gans v. Parkview Plaza Partnership, supra*; *K.S.R. v. Novak & Sons, Inc.*, 225 Neb. 498, 406 N.W.2d 636 (1987). If the criminal activity is reasonably foreseeable, it may create a duty owed by the landlord to the business invitee. In other words, the landlord has to conform to the legal standard of reasonable conduct in light of the apparent risk. Stated succinctly by Justice Cardozo many years ago in *Palsgraf v. Long Island R. R. Co.*, 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928), "The risk reasonably to be perceived defines the duty to be obeyed . . . ." See, also, *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs., supra.*

The importance of evidence of prior criminal activity was set forth in *Gans v. Parkview Plaza Partnership, supra*. In discussing the duty of the landowner, we referred to the Restatement (Second) of Torts § 344 at 226 (1965), which provides:

> If the place or character of [a landowner's] business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

Additionally, we stated:

> While liability is to be imposed only where there has been a history of criminal activity such as to make it foreseeable that such activity would occur in the future . . . it

does not necessarily follow that the prior similar criminal activity must have taken place at the premises; it is required only that the criminal act or acts occurring near the premises in question give notice of the risk that crime may travel to the premises of the business owner . . . . Thus, it is the totality of the circumstances, not solely the number or location of prior incidents, that must be considered in determining foreseeability. . . . [I]n order to make the risk of attack foreseeable, the circumstances to be considered must have a direct relationship to the harm incurred.

*Gans*, 253 Neb. at 383, 571 N.W.2d at 267.

We stated that the law does not require precision in foreseeing the exact hazard or consequence which happens. It is sufficient if what occurs is one of the kinds of consequences which might reasonably be foreseen. *Gans v. Parkview Plaza Partnership, supra; Stodola v. Grunwald Mechanical Contractors*, 228 Neb. 301, 422 N.W.2d 341 (1988).

In order to establish the landlord's duty of reasonable conduct in light of the apparent risk, Doe had to present evidence of prior criminal activity which would give notice to the landlord of the risk that criminal conduct might occur in or around the Gunny's building. Evidence of prior criminal activity is a necessary component in the totality of the circumstances which must be considered in determining foreseeability. *Gans v. Parkview Plaza Partnership*, 253 Neb. 373, 571 N.W.2d 261 (1997); *Erichsen v. No-Frills Supermarkets*, 246 Neb. 238, 518 N.W.2d 116 (1994).

Doe established that transients were living in the building and that the building had been vandalized in the past. Gunny's contends that this evidence is not sufficient to place it on notice that a sexual assault might occur on the premises.

At trial, Doe offered additional evidence of prior criminal activity which was excluded by the court. Exhibit 21 is a computer printout of data showing that in the 5 years prior to the assault, the Lincoln Police Department received approximately 1,700 calls requesting that police be dispatched to an eight-block area including and surrounding the Gunny's building. A dispatch is a call for service in which Lincoln police officers are

sent out to investigate. When a call is received by a police operator, the operator makes an entry in the department's computer. This information is stored in a seven-column database. Exhibit 21 is a printout of this seven-column database. The first two columns indicate the date and time of a call; the third provides the case number; the fourth gives the location where police assistance was needed; the fifth, entitled "Type of Call," indicates what type of crime allegedly occurred; and the final two columns list the name of the officer who responded to the call and indicate whether an incident report was filed. Exhibit 21 reveals that from December 18, 1988, through May 25, 1993, the Gunny's building or one of the businesses located within the building had no less than 250 reports or incidents which ranged from assault, larceny, and transients in the building to complaints regarding suspicious persons.

Doe called Remmers-Hammer, a records supervisor for the Lincoln Police Department, who testified that she performed data compilation for the police department and that each time a dispatch was sent or a call requesting service was received, she would document it in the department's computer. Remmers-Hammer testified regarding how the calls were documented and stated that the list of calls was prepared during the ordinary course of the Lincoln Police Department's activity.

Exhibit 21 was objected to as being hearsay, irrelevant, not competent evidence, not a business record, and of no probative value. In denying the admission of the exhibit, the trial court stated:

> Well, it may have some probative value as to the issues in the case. The problem — it seems to me that it certainly is a business record as to the fact that these are the calls that were received. But to go further and say there is a — some veracity or how much weight to be given to the calls themselves or the so-called reports is the problem.
>
> . . . .
>
> . . . It certainly shows the calls they received. But the calls they received are not relevant.

The trial court continued with its analysis by stating:

> The problem I have is that — as I indicated to Mr. Douglas, the defendant can't hide behind the fact they had

no actual knowledge. They can't stick their head in the sand and say because we are unwilling to look or we are unwilling to check, we are unwilling to see whether there are any problems with this building, we don't have any actual knowledge. I don't think that's the law. But they need to make some kind of reasonable inquiries and be aware of perhaps what everybody else is aware of if there are offenses that have occurred there.

The problem is is [sic] the fact there may have been phone calls, doesn't bear upon the fact as to any actual offenses. I think if you can show that there were incidents that occurred there that at least warranted investigation at the building then that's another thing. The fact there may have been phone calls, for all we know, it was a disgruntled, former spouse of the officer on duty in that area that decided that they wanted to keep him or her busy all night long. So the objection to Exhibit 21 will be sustained.

We disagree with the trial court's determination regarding exhibit 21 and conclude that it should have been admitted. Neb. Rev. Stat. § 27-803 (Reissue 1995) provides in part that the following are not excluded by the hearsay rule:

(5) A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, other than opinions or diagnoses, made at or near the time of such acts, events or conditions, in the course of a regularly conducted activity, if it was the regular course of such activity to make such memorandum, report, record, or data compilation at the time of such act, event, or condition, or within a reasonable time thereafter, as shown by the testimony of the custodian or other qualified witness unless the source of information or method or circumstances of preparation indicate lack of trustworthiness. The circumstances of the making of such memorandum, report, record, or data compilation, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight.

Exhibit 21 meets the criteria of § 27-803(5) and, thus, falls within an exception to the hearsay rule. Remmers-Hammer, the custodian of the records, testified that all of the calls the Lincoln Police Department receives are recorded by the opera-

tors and that records of the time, content, and place of dispatch are kept in the regular course of business. Doe laid the proper foundation to have exhibit 21 admitted as a business record, and the trial court should have admitted the exhibit. See, *Graen's Mens Wear v. Stille-Pierce Agency*, 329 N.W.2d 295 (Iowa 1983); *Commonwealth v. Graver*, 461 Pa. 131, 334 A.2d 667 (1975). Pursuant to § 27-803(5), "[t]he circumstances of the making of such memorandum, report, record, or data compilation, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight"; however, such factors do not prohibit admission of the evidence.

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Neb. Rev. Stat. § 27-401 (Reissue 1995); *In re Application of Jantzen*, 245 Neb. 81, 511 N.W.2d 504 (1994). Exhibit 21 shows that the Lincoln Police Department had received no less than 250 reports of criminal activity at or near the Gunny's building in the 5 years preceding Doe's sexual assault. The calls received by the police were relevant as evidence of complaints regarding criminal activity. Therefore, the trial court erred when it concluded that exhibit 21 was not relevant.

Since the trial court erroneously excluded exhibit 21, the question is whether such evidence can be considered by an appellate court when the appellant challenges the sufficiency of the evidence to support the judgment. In *Washington v. American Community Stores Corp.*, 196 Neb. 624, 244 N.W.2d 286 (1976), an athlete was injured in a car accident. Liability was not contested, and the issue of damages was submitted to the jury. The jury awarded $76,000 in damages, and the defendant appealed, claiming that there was insufficient evidence presented to support the jury's findings with regard to loss of prospective earnings of the athlete as a coach. The plaintiff had offered evidence of the earning capacity of coaches and wrestlers to prove the average starting salary of a collegiate wrestling coach and the amount that a good professional wrestler would average per week. The defendant objected to this testimony, and it was excluded by the court. We held that a

party who objects to the evidence and causes it to be excluded cannot obtain a reversal of the judgment as unsupported for want of the evidence so excluded, citing *Knudson v. Parker*, 70 Neb. 21, 96 N.W. 1010 (1903).

Here, Gunny's objected to exhibit 21, which contained evidence of prior criminal activity, and caused it to be excluded. Our holding in *Washington v. American Community Stores Corp., supra*, seems somewhat inconsistent with our rules regarding the admissibility of evidence. Evidence which is inadmissible is irrelevant and should be excluded from consideration by a court or jury. See *State v. Kirksey*, 254 Neb. 162, 575 N.W.2d 377 (1998) (all relevant evidence is normally admissible). Therefore, our statement in *Washington v. American Community Stores Corp., supra*, needs further clarification. In passing on the sufficiency of the evidence, an appellate court should be able to consider all the evidence offered by the plaintiff, including evidence offered but erroneously excluded by the trial court. Thus, if the party asserting that the evidence was insufficient has caused certain evidence to be erroneously excluded by the trial court, the appellate court can review all of the relevant evidence to determine the question of whether the evidence was sufficient.

In *Smith v. J. C. Penney Co.*, 260 Iowa 573, 149 N.W.2d 794 (1967), the Iowa Supreme Court held that in passing on the sufficiency of the evidence, the reviewing court may consider all the evidence offered by the plaintiff, including that evidence which was improperly excluded by the trial court. In *Phillips v. Salk, Ward & Salk, Inc.*, 20 Ill. App. 3d 359, 314 N.E.2d 262 (1974), the Illinois Appellate Court noted that an exhibit which had erroneously been excluded from evidence could be reviewed to determine whether there was sufficient evidence to support the order.

Therefore, in considering whether there was sufficient evidence to establish the duty of Gunny's in this case, we will consider all relevant evidence offered by the plaintiff, including that evidence which was improperly excluded by the lower court. Obviously, inadmissible evidence which was properly excluded by the trial court is not considered.

Exhibit 21 shows that in the 5 years preceding the assault, the police responded to calls involving batteries, larcenies, disturbances, and robberies which occurred in the vicinity of the Gunny's building. Taking into consideration exhibit 21, we conclude that Doe offered sufficient evidence of prior criminal activity to establish the duty and that, therefore, the case should have been submitted to the jury. Since we conclude that there would have been sufficient evidence had the trial court not excluded exhibit 21, Gunny's, in this instance, cannot obtain a reversal of the judgment on the basis that the evidence was insufficient.

Next, Gunny's claims that it was error for Doe's expert to testify as to whether the presence of a security guard would have prevented the assault. The admission of evidence is reviewed for abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *Menkens v. Finley*, 251 Neb. 84, 555 N.W.2d 47 (1996).

In *Harvey v. Van Aelstyn*, 211 Neb. 607, 319 N.W.2d 725 (1982), which was relied upon by Gunny's, the defendant, who had not been present at the bar previously, entered from the east door of the bar, walked rapidly to the dance floor, and then struck the plaintiff in the face and kicked and stomped on the plaintiff. Immediately, an off-duty, part-time employee of the tavern and other male patrons restrained the defendant and removed him from the tavern. We noted in *Harvey* that it was clear that the property owner could not have done anything to prevent the assault from occurring because it happened suddenly and unexpectedly. We held as a matter of law that the defendant was not bound to anticipate the unforeseen entry of the defendant on the premises and the totally unexpected subsequent assault upon the plaintiff.

Doe's sexual assault did not occur instantaneously, and thus, the facts of this case are distinguishable from the facts of *Harvey*. Doe's attacker was present in the lobby for a period of time. Doe testified that she observed him when she and her friend first passed through the lobby. Further, her attacker remained in the lobby long enough to hold the elevator and to

await a victim. Arguably, in light of these circumstances, the presence of a security guard in the lobby could have prevented the sexual assault.

Gunny's argues that since the security guard's job was merely to observe and report, the guard's presence could not have prevented the sexual assault. Gunny's stresses that it cannot prevent random acts of violence.

Whether Doe's attack could have been prevented was called into question at trial. Therefore, under the facts of this case, we cannot say that the trial court abused its discretion in permitting Doe's expert to give his opinion as to whether the presence of a security guard on the night that the assault occurred would have prevented the crime.

Gunny's next argues that the trial court erred in admitting the statement of Gunny's property manager to the effect that if Gunny's had a security guard, then it would be liable for any damage. Gunny's moved to strike the testimony as an erroneous legal conclusion without foundation. The objection was overruled. Gunny's claims that the testimony regarding a conversation with Reesman, its property manager, which occurred 1 year after the assault was a legal conclusion which was very prejudicial and constituted grounds for reversal.

Prior to the receipt of this testimony, Reesman had been questioned as to whether there was any connection between the increase in cost for the security guard and the decision of Gunny's to eliminate the security guard's employment from the hours of 9 p.m. to 1:30 a.m. Reesman stated that the decision to reduce the security guard's hours was not based upon an increase in his hourly wage, but was based upon the fact that Gunny's did not want to charge its tenants for security which it viewed as unnecessary. Subsequently, Doe offered the testimony of Felcher, who stated that the issue of the security guard was discussed with Reesman and that she was told by Reesman that it would be too expensive to have security and that if there was security, "then any damage or injury [Gunny's] would be liable for and that was the reason that they wouldn't [provide security in the lobby]."

The question, as framed by the testimony, was, Why did Gunny's decide not to have a security guard present in the lobby

from 9 p.m. to 1:30 a.m.? Whether the statement made by Reesman was a legal conclusion is not decisive of whether the statement was admissible. The statement was offered by Doe to establish why Gunny's had decreased its security. The statement tended to establish that Gunny's had decreased the security because it was too costly and because Gunny's believed that if they had security there, they would be liable for any damage that occurred. The evidence was relevant and admissible to show why Gunny's reduced the number of hours the security guard would be present at the building. Thus, the statement was not offered as a legal conclusion. We conclude that the admission of such evidence was not erroneous.

Gunny's asserts the trial court erred by refusing to give the jury instructions it tendered regarding evidence of prior crimes. It is the duty of the trial court to instruct on the proper law of the case, and failure to do so constitutes prejudicial error. *Heye Farms, Inc. v. State*, 251 Neb. 639, 558 N.W.2d 306 (1997).

The trial court gave the following jury instruction No. 5:

The owner of a place of business who holds it open to the public for entry for its business purposes is subject to liability to members of the public while upon the premises for such a purpose for bodily harm caused to them by the accidental, negligent, or intentional harmful acts of third persons, if the owner by the exercise of reasonable care could have discovered that such acts were being done or were about to be done and could have protected the members of the public by controlling the conduct of the third persons.

A business owner is not an insurer of the visitor's safety and is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct

on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide reasonable protection.

Gunny's requested that the jury be instructed that "[l]iability may be imposed on a landlord only where there is a history of criminal activity at the leased premises sufficient to create in the landlord constructive notice of the foreseeability that such activity would recur in the future."

To establish reversible error from a court's failure to give a requested instruction, an appellant has the burden of showing that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the tendered instruction. *Tapp v. Blackmore Ranch*, 254 Neb. 40, 575 N.W.2d 341 (1998).

Gunny's does not object to the instructions that were given by the trial court, but, instead, asserts that its instructions should have been given and that the court's refusal requires reversal and a new trial. Instructions Nos. 2 through 9 offered by Gunny's deal with the issue of foreseeability. For example, instruction No. 2 offered by Gunny's stated: "A possessor of land is not required to anticipate the unforeseen acts of third persons. It is only when such acts can reasonably be anticipated that the possessor has a duty to take such precautionary measures as to protect against such independent acts." Instruction No. 3 is similar. Instruction No. 4 provided that liability may be imposed only where there is a history of criminal activity sufficient to create constructive notice of the foreseeability.

All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. *Tapp v. Blackmore Ranch, supra.* The jury instructions given by the trial court correctly stated the law, were not misleading, and adequately covered the issues supported by the pleadings and the evidence. We conclude that there was no prejudicial error by the trial court's failure to give the instructions tendered by Gunny's.

We therefore affirm the judgment of the district court.

AFFIRMED.

WHITE, C.J., not participating.