MICHAEL SACCO, APPELLANT, V. GARY CAROTHERS,
DOING BUSINESS AS THE ROUND TABLE, APPELLEE.

601 N.W. 2d 493

Filed September 17, 1999.　No. S-98-163.

Vincent M. Powers for appellant.

J. Arthur Curtiss and David D. Zwart, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Michael Sacco (Sacco) sustained injuries in a fight in the parking lot outside of the Round Table tavern in Grand Island, Nebraska, on December 24, 1991. Sacco sued Gary Carothers, the owner of the Round Table, alleging that Sacco was injured as a result of various acts of Carothers' negligence. Sacco appeals from a jury verdict entered in favor of Carothers.

Sacco assigns 12 errors. We conclude that one assignment of error requires reversal and that the remainder are without merit. Specifically, we conclude that the trial court erred in refusing to admit into evidence certain police reports and that the exclusion of this evidence unfairly prejudiced Sacco's substantial rights at trial. We reverse, and remand for a new trial.

## STATEMENT OF FACTS

In an earlier appeal in this same case, we ruled that the trial court erred in separately instructing the jury regarding efficient intervening cause, and we reversed the judgment and remanded the cause for a new trial. *Sacco v. Carothers*, 253 Neb. 9, 567 N.W.2d 299 (1997). In *Sacco*, we set forth in detail the factual background of the case, and we repeat here only the facts relevant to the instant appeal.

Around noon on December 24, 1991, Sacco and his brother, Dominic Sacco, went to the Round Table, where they stayed into the evening, playing pool and drinking alcoholic beverages. Perry Roeber arrived at the Round Table at approximately 5:30 or 6 p.m. and, like the Sacco brothers, Roeber played pool and drank. Dominic Sacco left the bar at approximately 9 p.m., and during his absence, Sacco and Roeber got into a dispute which escalated into a physical scuffle over the payment of a pool bet. It is undisputed that at the time the subsequent fight in the parking lot erupted, Sacco had been drinking heavily, having consumed several pitchers of beer and approximately seven shots of Jack Daniels whiskey.

On December 24, 1991, one bartender, Jeanette Zahm, was on duty at the Round Table after approximately 8:30 p.m., and she was responsible for serving the 50 to 70 people in the bar that evening. Zahm testified that in the 2 years she had worked at the

Round Table there had been less than five fights and that she believed she had a duty to keep fights from occurring in the bar but that that duty did not extend to the parking lot. Zahm also stated that she was aware that persons who drink alcohol excessively can become hostile and get into fights.

The Round Table did not employ any particular person to act as "security" or as a bouncer. When disagreements erupted in the bar, one or two regular patrons would often intervene to break up the fight. On this particular evening, Frank Matthews, a frequent customer of the Round Table, separated Sacco and Roeber, telling them to take their fight outside. Zahm also told Sacco and Roeber that if they were going to fight, they had to take it outside or she would call the police.

Carothers testified that if Matthews was present in the bar while an argument was developing, Matthews "would say not in here, knock it off, or leave, or something like that. He would generally try to control that type of thing." When testifying about fights at the bar, Carothers stated that fights in the bar "didn't happen very often." Carothers further testified that Zahm had been instructed that if an argument did not stop, she should call the police "[a]nytime"; that he did not want people fighting in the parking lot; and that he understood that his responsibility as owner "did not end at the back door." With respect to how often the police had been called to the Round Table as a result of fights or disturbances, Carothers stated that "it wasn't that often."

At trial, Sacco offered exhibits 1 and 30, which were collectively 30 police reports reflecting police responses to numerous, sometimes violent, incidents and disturbances at the Round Table. The trial court sustained Carothers' objection to the police reports based on relevancy.

The evidence at trial shows that on the night in question, Roeber left the bar by the back door, which provided access from the bar to a parking lot. Before he left, Roeber told Sacco he would be outside if Sacco wanted to finish the fight. Removing his shirt, Sacco followed Roeber outside. Matthews also went outside with Sacco and Roeber. Matthews testified that his purpose in so doing was to make sure that no one else became involved in the fight. Once outside, Sacco approached Roeber and struck him in the shoulder or chest. Roeber swung

back, hitting Sacco in the face or jaw. Both men then fell on ice in the parking lot, and Sacco hit his head on the ground.

Matthews told Roeber the fight was over, and Roeber left the parking lot. Initially, Matthews told Zahm not to call the 911 emergency dispatch service, and Sacco was left lying unconscious in the parking lot. Approximately 10 or 15 minutes later, Matthews told Zahm to call 911, but before Zahm did so, Dominic Sacco returned to the bar. Dominic Sacco said that he would take care of Sacco and that 911 should not be called. Dominic Sacco took Sacco to his apartment. He did not call an ambulance until later that night when he noticed blood coming from Sacco's mouth. As a result of injuries he sustained in the fight, Sacco suffered permanent disabilities.

## ASSIGNMENTS OF ERROR

On appeal, Sacco raises 12 assignments of error. We conclude that one assigned error requires reversal and that the remainder are without merit. Accordingly, we discuss only the assigned error that the district court erred in excluding from evidence certain police reports offered by Sacco.

## STANDARD OF REVIEW

The admissibility of evidence is reviewed for abuse of discretion when the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *Deuth v. Ratigan*, 256 Neb. 419, 590 N.W.2d 366 (1999). The exercise of judicial discretion is implicit in determinations of relevancy, and a trial court's decision regarding relevancy will not be reversed absent an abuse of discretion. *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996).

## ANALYSIS

Sacco claims that the trial court erred in excluding exhibits 1 and 30, police reports regarding incidents at or near the Round Table. In his brief, Sacco argues the police reports were relevant because they went to "Carothers' knowledge of incidents," brief for appellant at 30, thereby establishing that disturbances or fights were foreseeable, thereby giving rise to a duty by Carothers. Sacco also indicates that the police reports were relevant to establish the breadth of Carothers' duty and further that

fights in the parking lot could be anticipated and that, thus, the reports were relevant to the issue of proximate cause. Sacco claims the exclusion of these exhibits was prejudicial error.

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *State v. McBride, supra*; Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1995). All relevant evidence normally is admissible, and conversely, evidence which is not relevant is not admissible. *State v. McBride, supra.* The exercise of judicial discretion is implicit in determinations of relevancy, and a trial court's decision regarding relevancy will not be reversed absent an abuse of discretion. *Id.* A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *State v. Vogel*, 247 Neb. 209, 526 N.W.2d 80 (1995). Error may not be based upon a ruling excluding evidence unless a substantial right is affected and "the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked." Neb. Evid. R. 103(1)(b), Neb. Rev. Stat. § 27-103(1)(b) (Reissue 1995). See, also, *Deuth v. Ratigan, supra.*

In the instant case, Sacco claims the trial court erred when it excluded from evidence Sacco's proffered exhibits 1 and 30. Exhibit 1 offered by Sacco is a 16-page compilation, most pages of which contain copies of two police incident reports. The reports are written on "Departmental Correspondence" forms, apparently from the Grand Island Police Department. Each departmental correspondence form has a space for the date; "Subject," "To," and "From" lines; and a blank area at the bottom of the form for a narrative of the incident reported thereon. The forms comprising exhibit 1 are completed and are addressed, with minor distinctions, to Chief E. Watson, identified in certain of the forms as the "Chief of Police." Each form contains narration of an incident. Exhibit 30 is a single page consisting of copies of two police reports on the departmental

correspondence forms, also addressed to Chief Watson and also containing narration. Exhibit 30 is duplicated on page 11 of exhibit 1.

At the outset of our review, we observe that the record regarding exhibit 1 is less than clear. In their briefs, the parties refer to exhibits 1 and 30 as having been the subject of a motion in limine which was granted and, thereafter, the subject of an offer at trial which was denied. The motion in limine, the reasons therefor, and a detailed ruling thereon are not in the record. The compilation exhibit, "exhibit 1" in the record, bears an exhibit sticker dated "9-18-95," the date of the original trial which was the subject of reversal on appeal in *Sacco v. Carothers*, 253 Neb. 9, 567 N.W.2d 299 (1997). Exhibit 30 bears an exhibit sticker dated "1-12-98," the date of the retrial. The colloquy with the court regarding the identification and admissibility of exhibit 1 at the retrial of the case suggests that the court and parties were considering the admissibility of exhibit 1 from the first trial, although they failed to separately mark or identify it. The parties refer freely in their briefs to "exhibit 1," identifying it as "police reports." There is a ruling excluding exhibit 1. Accordingly, we review for admissibility the police reports compiled in exhibit 1, bearing the exhibit sticker dated "9-18-95," as they pertain to Carothers' assignment of error based on the trial court's evidentiary ruling at the retrial. Because our conclusion regarding exhibit 1 encompasses the admissibility of exhibit 30, we do not discuss exhibit 30 separately.

In order for negligence to exist, a defendant must have a legal duty to protect a plaintiff from injury, the defendant must fail to discharge that duty, and the plaintiff must suffer damage proximately caused by the defendant's failure to satisfy the duty. *Doe v. Gunny's Ltd. Partnership*, 256 Neb. 653, 593 N.W.2d 284 (1999); *Gans v. Parkview Plaza Partnership*, 253 Neb. 373, 571 N.W.2d 261 (1997). " ' "[D]uty" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk.' " *Schmidt v. Omaha Pub. Power Dist.*, 245 Neb. 776, 786, 515 N.W.2d 756, 763 (1994) (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts

§ 53 (5th ed. 1984)). See, also, *Doe v. Gunny's Ltd. Partnership, supra*. A factor in establishing the defendant's duty is the foreseeability of risk. *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248 Neb. 651, 538 N.W.2d 732 (1995).

We have repeatedly stated that the owner of a business is not an insurer of a patron's safety but does owe a patron a duty of reasonable care. See, e.g., *Ratigan v. K.D.L., Inc.*, 253 Neb. 640, 573 N.W.2d 739 (1998); *Hulett v. Ranch Bowl of Omaha*, 251 Neb. 189, 556 N.W.2d 23 (1996). The duty owed by the business owner is not absolute but is graduated according to the danger attendant upon the activities of the business pursued and depends upon the facts and circumstances surrounding each particular case. *Hulett v. Ranch Bowl of Omaha, supra*. Whether a business proprietor of a restaurant, tavern, or similar establishment is liable for the adverse actions of a third party against a lawful visitor depends primarily upon whether those actions were reasonably foreseeable to the proprietor. *Ratigan v. K.D.L., Inc., supra*.

Based on the record, we understand that Sacco claimed that the police reports in exhibit 1 were relevant, inter alia, to foreseeability as it pertains to duty because they show that given past incidents in and near the Round Table, the risk of a fight or some other kind of disturbance at the Round Table was foreseeable and that, therefore, Carothers owed Sacco a duty to conform to the legal standards of reasonable conduct in light of the apparent risk. On appeal, Sacco indicates that the police reports were also relevant to the issues of the scope of Carothers' duty and, arguably, proximate cause. At trial, Carothers objected to exhibit 1 on relevance grounds, and the trial court excluded the exhibit.

In *Doe v. Gunny's Ltd. Partnership, supra*, this court has recently discussed the admissibility and relevance of police reports in a related area involving landlord negligence. In *Doe v. Gunny's Ltd. Partnership, supra*, after the plaintiff was assaulted in the lobby of a building owned by the defendant, the plaintiff sued the defendant, alleging the defendant was negligent in failing to use reasonable care to protect business visitors from assaults by third parties. The defendant appealed an adverse jury verdict, claiming the plaintiff failed to offer any evidence of criminal activity at or near the building and there-

fore failed to establish foreseeability and a consequent duty on the part of the defendant to protect her. At trial, the plaintiff had offered a multipage data compilation of police dispatch calls to the eight-block area around the defendant's building. The defendant successfully objected to the plaintiff's offer of the police reports, claiming the reports were irrelevant and were inadmissible hearsay.

On appeal, we held that the trial court erred in excluding the evidence of police reports. We stated that for the plaintiff to establish the defendant's "duty of reasonable conduct in light of the apparent risk, [the plaintiff] had to present evidence of prior criminal activity which would give notice to the [defendant] of the risk that criminal conduct might occur in or around the . . . building." *Doe v. Gunny's Ltd. Partnership*, 256 Neb. 653, 660, 593 N.W.2d 284, 290 (1999). Finding the reports admissible under the business records exception to the hearsay rule, we stated the reports were relevant as evidence of criminal activity at or near the defendant's building. We determined that the trial court committed error in excluding the evidence and that taking into consideration the proffered police reports, there was sufficient evidence of prior criminal activity to establish the defendant's duty to the plaintiff.

In the present case, Carothers objected to exhibit 1 during the trial as irrelevant and immaterial. The trial court sustained the objection and excluded the exhibit.

As we have noted above, "[r]elevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Doe v. Gunny's Ltd. Partnership*, 256 Neb. at 663, 593 N.W.2d at 291. Exhibit 1 consists of 30 police reports describing police calls to the Round Table and the surrounding area starting on July 3, 1988, and periodically thereafter including November 21, 1991. More than half of the 30 incidents reported pertained to fights or disturbances. The disturbances described on the forms include separating patrons who were "shoving and pushing," removing "drunken" persons from the bar, and breaking up fights in or near the tavern. The reports reflect such incidents as a "male in the parking lot with a gun," an individual stabbed in

the leg in the alley behind the Round Table, and an indication on May 16, 1990, that an officer was "told by employees from the Round Table that they have had an increased incidence of problems since Razzy's burned down and the clientele moved to the Round Table." Certain of the incidents were noticed by officers on patrol. Certain of the police calls were in response to citizen reports and thereafter brought to the attention of management. The reports indicate that certain police calls were specifically made at the request of the management of the Round Table.

■ The calls to which the police responded were relevant as evidence regarding fights and disturbances in and near the Round Table, and thus, the foreseeability of fights and disturbances in or outside the tavern related to foreseeability as it pertained to Carothers' duty. The police reports in exhibit 1, upon proper foundation, were admissible as business records, Neb. Evid. R. 803(5), Neb. Rev. Stat. § 27-803(5) (Reissue 1995), and were relevant to the issue of Carothers' duty to Sacco to protect Sacco from injury from third persons. See, *Ratigan v. K.D.L., Inc.*, 253 Neb. 640, 573 N.W.2d 739 (1998); *Hulett v. Ranch Bowl of Omaha*, 251 Neb. 189, 556 N.W.2d 23 (1996). The police reports were also relevant as they pertained to the breadth of the duty Carothers owed patrons. Because Carothers owed Sacco a duty of reasonable care in light of the circumstances, the information in the police reports would be useful in defining the scope of the duty owed by Carothers by more fully developing the record as to the context in which the duty was to be performed. The police reports were also relevant as they may have pertained to proximate cause. In this regard, we note that there is authority for the proposition that the foreseeability of criminal activity is a factor in determining causation. See, e.g., *Ten Associates v. McCutchen*, 398 So. 2d 860 (Fla. App. 1981). For these reasons, the police reports were admissible, and the trial court erred when it excluded exhibit 1.

■ The conclusion that the trial court erred in excluding exhibit 1 does not end our inquiry. To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted or excluded. *Deuth v. Ratigan*, 256

Neb. 419, 590 N.W.2d 366 (1999); *Radecki v. Mutual of Omaha Ins. Co.*, 255 Neb. 224, 583 N.W.2d 320 (1998).

At trial, exhibit 1 was offered to show that prior disturbances had occurred at or near the Round Table, that Carothers knew of these incidents, that an incident such as that which occurred on December 24, 1991, was foreseeable, and that Carothers therefore had a duty to conform to the legal standard of reasonable care.

■ Exhibit 1 was offered in part to establish duty. Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Popple v. Rose*, 254 Neb. 1, 573 N.W.2d 765 (1998). A review of the record in the instant case shows that, notwithstanding the exclusion of exhibit 1, the trial court nevertheless concluded that Carothers owed Sacco a duty of care, and it submitted the case to the jury. At trial, Carothers moved for a directed verdict at the end of Sacco's case and at the conclusion of the evidence. The motions were denied. Implicit in the denials was the trial court's conclusion that, as a matter of law, duty had been established and that the case should therefore be submitted to the jury. In view of the fact that the trial court concluded that Sacco established the existence of a duty of Carothers without exhibit 1, the exclusion of exhibit 1, although erroneous, did not unfairly prejudice Sacco's substantial right at trial to establish the element of duty, and a reversal is not required on this basis.

■ Exhibit 1 was also relevant to the issue of the breadth of Carothers' duty. As we have noted, duty is graduated according to the danger attendant upon the activities of a business and the circumstances surrounding each particular case. *Hulett v. Ranch Bowl of Omaha, supra.* Its admission would have added facts regarding the historical profile of the Round Table and would have assisted the jury in evaluating what steps an owner of a bar with a certain character should take to protect the bar's lawful visitors from the acts of third persons. Specifically, exhibit 1 was relevant and probative of whether Carothers breached his duty to Sacco, an issue to be decided by the jury. There is no other evidence in the record comparable to exhibit 1. Carothers' and Zahm's comments regarding past disturbances at the bar, alone, did not provide the jury with the context in which to eval-

uate whether or not Carothers exercised reasonable care under the circumstances to protect Sacco against harm from other persons. Exhibit 1 detailed numerous disturbances and fights in or near the Round Table and would have assisted the jury in determining whether or not Carothers met the standard of reasonable care. The exclusion of exhibit 1 substantially prejudiced Sacco's rights at trial, and its exclusion was reversible error. For this reason, the judgment is reversed, and the cause is remanded for a new trial.

## CONCLUSION

On the basis of the record before us, we conclude that exhibit 1 was relevant and otherwise admissible, that its exclusion was error, and that a substantial right of Sacco was prejudiced by the exclusion of exhibit 1, requiring a decision to reverse and remand for a new trial. We have reviewed the remainder of Sacco's assignments of error and find them to be without merit.

REVERSED AND REMANDED FOR A NEW TRIAL.