TA'SEAN BROWN, BY AND THROUGH HIS PARENT AND
NEXT FRIEND, HELEN WATTS, AND HELEN WATTS,
INDIVIDUALLY, APPELLANTS, V. SOCIAL SETTLEMENT
ASSOCIATION AND JOHN DOE,
REAL NAME UNKNOWN, APPELLEES.

610 N.W. 2d 9

Filed May 5, 2000.   No. S-99-373.

James A. Mullen, of Lefler & Mullen Law Offices, for appellants.

Thomas J. Culhane and Patrick R. Guinan, of Erickson & Sederstrom, P.C., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Helen Watts brought this negligence action individually and on behalf of her son, Ta'Sean Brown (collectively Watts), against Social Settlement Association (Association) and its alleged employee, "John Doe." The Association demurred to Watts' sixth amended petition for failure to state a cause of action. The district court sustained the demurrer and dismissed the action. Watts appealed, and we moved the case to our docket pursuant to our authority to regulate the caseloads of Nebraska appellate courts. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## FACTUAL BACKGROUND

Watts' operative petition alleges the following: At the time of the accident underlying this claim, Watts' son, Ta'Sean, was 8 years old. Watts contracted with the Association, a recreational child-care facility located at 4868 Q Street in Omaha, Nebraska, to provide care for Ta'Sean. Watts paid a fee to the Association for providing child care. On the Association's child-care application, Watts listed the names of four persons authorized to pick Ta'Sean up from the Association's child-care facility. Watts listed herself; Ta'Sean's father, Sylvester Watts; Ta'Sean's sister, Roberta Brown; and Ta'Sean's aunt, Terry Agee.

Watts further alleged she specifically told the Association, at some point after Ta'Sean was enrolled at the Association and before the accident, that Ta'Sean's 12-year-old brother, Jermaine Watts, was not allowed to pick up Ta'Sean because Jermaine was unable to properly supervise Ta'Sean.

On May 24, 1997, after Ta'Sean returned from a field trip, John Doe, the alleged employee of the Association, acting within the scope and course of his employment, released Ta'Sean to Jermaine's care. The operative petition then alleges that within minutes of leaving the Association, because Ta'Sean was not properly supervised by Jermaine, Ta'Sean proceeded into westbound traffic on Q Street and was struck by a pickup truck, resulting in Ta'Sean's sustaining a broken jaw, facial lacerations, and loss of teeth. Watts also alleges that she has incurred $10,000 in medical bills as a result of Ta'Sean's injuries and that she will incur medical expenses in the future.

The Association demurred to Watts' operative petition, asserting that it failed to state a cause of action. Watts elected to stand on this petition. The district court sustained the demurrer and dismissed the case. Watts timely appealed.

## ASSIGNMENT OF ERROR

Watts asserts that the trial court erred in sustaining the demurrer.

## STANDARD OF REVIEW

■ Whether a petition states a cause of action is a question of law, regarding which an appellate court has an obligation to reach a conclusion independent of that of the inferior court. *Cobb v. Sure Crop Chem. Co.*, 255 Neb. 625, 587 N.W.2d 355 (1998); *Vanice v. Oehm*, 247 Neb. 298, 526 N.W.2d 648 (1995).

■ When reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept as true the legal conclusions of the pleader. *Brown v. Kindred, ante* p. 95, 608 N.W.2d 577 (2000); *Leader Nat. Ins. v. American Hardware Ins.*, 249 Neb. 783, 545 N.W.2d 451 (1996).

■ In determining whether a cause of action has been stated, a petition is to be construed liberally. *Twin Towers Dev. v. Butternut Apartments*, 257 Neb. 511, 599 N.W.2d 839 (1999). If as so construed the petition states a cause of action, a demurrer based on the failure to state a cause of action must be overruled. *Id.*

## ANALYSIS

In order to withstand a demurrer, Watts is required to plead a statement of "facts sufficient to constitute a cause of action," pursuant to Neb. Rev. Stat. § 25-806(6) (Reissue 1995). We have interpreted this phrase to mean "a narrative of events, acts, and things done or omitted which show a legal liability of the defendant to the plaintiff." *Twin Towers Dev. v. Butternut Apartments*, 257 Neb. at 514, 599 N.W.2d at 843. Accord *Giese v. Stice*, 252 Neb. 913, 567 N.W.2d 156 (1997). The purpose of this requirement is to define the issues to which the defendant must respond at trial and inform the court of the real matter in dispute. See *McCurry v. School Dist. of Valley*, 242 Neb. 504, 496 N.W.2d 433 (1993).

■ For actionable negligence to exist, there must be a legal duty on the part of the defendant to protect the plaintiff from injury, a failure to discharge that duty, and damage proximately resulting from such undischarged duty. *Hausman v. Cowan*, 257 Neb. 852, 601 N.W.2d 547 (1999); *Koltes v. Visiting Nurse Assn.*, 256 Neb. 740, 591 N.W.2d 578 (1999). In other words, Watts must plead " 'the four basic elements of negligence, namely, duty, breach of duty, proximate causation, and damages.' " *Woollen v. State*, 256 Neb. 865, 880, 593 N.W.2d 729, 740 (1999).

Construed liberally, and accepting the well-pled facts of the petition as true for purposes of the demurrer, Watts' petition does state a cause of action against the Association. Watts alleged facts which show the Association owed a duty of care to Ta'Sean. The Association, on the day of the accident, was acting as Ta'Sean's child-care provider. Watts has also alleged the Association's breach of that duty in that the Association released Ta'Sean to his 12-year-old brother, Jermaine, despite being specifically informed prior to the accident that Ta'Sean was not to be released to Jermaine. Watts has further alleged facts which show proximate causation. The Association released Ta'Sean to Jermaine, and within minutes, Ta'Sean went into the street because Ta'Sean was not properly supervised by Jermaine. Finally, Watts has alleged facts which show damage proximately resulting from the Association's undischarged duty. After Ta'Sean went into the street, Ta'Sean was struck and injured by a pickup truck.

■ The Association asserts that Watts has failed to allege facts which show that the Association's release of Ta'Sean to Jermaine was a foreseeable proximate cause of Ta'Sean's accident. Specifically, it asserts that "without alleging specific acts of [Jermaine's] improper supervision, it was not possible for [the Association] to have foreseen how releasing Ta'Sean to Jermaine could have jeopardized Ta'Sean's safety." Brief for appellees at 14. However, "the test of causation is not that the particular injury could be anticipated, but whether, after the occurrence, the injury appears to be the reasonable and probable consequence of the acts or omissions." *Woollen v. State*, 256 Neb. at 883, 593 N.W.2d at 742. See, also, *Libbey-Owens Ford Glass Co. v. L & M Paper Co.*, 189 Neb. 792, 801, 205 N.W.2d 523, 529 (1973) ("[t]he law does not require precision in foreseeing the exact hazard or consequence which happens. It is sufficient if what occurs is one of the kind of consequences which might reasonably be foreseen").

For the purpose of withstanding a demurrer, it is reasonably foreseeable that the Association's release of Ta'Sean to Jermaine could result in harm to Ta'Sean, especially since Watts alleges that she specifically informed the Association that Ta'Sean should not be released to Jermaine because he was unable to properly supervise Ta'Sean.

The Association also asserts that Watts' petition fails to state a cause of action because Watts has not pled specific facts concerning what happened when Jermaine left the child-care facility with Ta'Sean. The petition alleges the following:

> Within minutes after [Ta'Sean] was released from the Association, [Ta'Sean] and Jermaine were on the north side of "Q" Street at approximately 4863 "Q" Street, waiting to cross "Q" Street when, because he was not properly supervised by Jermaine, [Ta'Sean] proceeded into the westbound traffic on "Q" Street and was struck by a pickup being driven by Carl Perkins.

The Association argues that the phrase "not properly supervised" is a legal conclusion and that thus, "without pleading what specific acts constitute [Jermaine's] improper supervision, [the Association] and the court was [sic] left to guess what acts or omissions constitute improper supervision." Brief for

appellees at 13. The Association asserts that because of this, Watts' petition fails to state a cause of action. Liberally construing the petition, we find that "not properly supervised" is simply an ordinary way of stating the fact that Jermaine failed to watch over Ta'Sean. The phrase "not properly supervised" in this context is a commonsense term similar to the terms "lookout" and "control" which are frequently used in automobile accident negligence claims. See, e.g., *McCurry v. School Dist. of Valley*, 242 Neb. 504, 496 N.W.2d 433 (1993); *Gadeken v. Langhorst*, 193 Neb. 299, 226 N.W.2d 632 (1975). See, also, *Suiter v. Epperson*, 6 Neb. App. 83, 571 N.W.2d 92 (1997). Accordingly, Watts' assertion that Jermaine failed to properly supervise Ta'Sean is sufficient to withstand a demurrer.

Watts' petition sets out a narrative of events which alleges all of the necessary elements to state a claim of negligence against the Association. Thus, the district court erred in sustaining the demurrer.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's order sustaining the Association's demurrer and dismissing the action, and remand this cause to the district court with directions to reinstate Watts' sixth amended petition.

REVERSED AND REMANDED WITH DIRECTIONS.