GORDON DESEL AND DEE DESEL, APPELLEES, V.
CITY OF WOOD RIVER, NEBRASKA,
A MUNICIPAL CORPORATION, APPELLANT.

614 N.W. 2d 313

Filed July 14, 2000.   No. S-99-657.

Christopher M. Ferdico, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellant.

Keith D. Sinor for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Gordon Desel and Dee Desel filed an action pursuant to the Political Subdivisions Tort Claims Act (the Act), Neb. Rev. Stat. §§ 13-901 to 13-926 (Reissue 1991 & Cum. Supp. 1994), against the City of Wood River, Nebraska (the City), seeking recovery for property damage which occurred when a sewerline, owned by the City, backed up and flooded the Desels' basement. The trial court entered judgment in favor of the Desels, finding that the City was negligent in maintaining the sewerlines. The City filed a motion for new trial, which was overruled. It is from this ruling that the City appeals. On our own motion, we removed this matter to our docket pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals. We affirm.

## BACKGROUND

On May 8, 1996, a sewerline, owned and operated by the City, backed up, causing sewage water to flood into the basement of the Desels' residence. The Desels filed an action against

the City, pursuant to the Act, alleging three causes of action: (1) strict liability, (2) negligence, and (3) breach of warranty. The City filed a motion for summary judgment, which was sustained as to the strict liability and breach of warranty causes of action. The remaining negligence claim was tried to the court.

The Desels called two witnesses at trial, Steve Timmons, the City's assistant utilities superintendent, and James A. Smith, the City's utilities superintendent. Timmons testified that as the assistant utilities superintendent, he responds to complaints about sewer backups. Timmons testified that prior to May 1996, the City's maintenance program for its sewer system included "flushing" or "jetting" the sewerlines at least once every year. "Flushing" refers to using a fire hydrant and a hose and running fresh water down the lines. "Jetting" involves using a high-pressure hose that is put into the sewerline. Timmons also testified that when the City receives frequent calls about a particular sewerline, a "TV inspection" is done, wherein a video camera is inserted into the sewer to attempt to analyze the problem.

Timmons testified that he was familiar with the sewer backups that have occurred on the particular line involved in this action because of his official duties and as a resident whose sewerline is approximately 50 feet downstream from the Desels and is attached to the same sewer main. Timmons testified that from 1980 to 1993, there had been sewer backups once per year in the sewer main located adjacent to the Desels' residence and that from 1993 to 1996, there had been "more trouble with it." Timmons also testified that he has sewer backup problems at his residence in the spring and fall.

Timmons testified that he had determined with a reasonable degree of certainty that roots in the sewerline were the source of the particular blockage that caused the backup into the Desels' residence. Timmons further testified that roots commonly invade the sewer system and that he was not aware of any way to prevent the roots from doing so. Timmons testified that the City tries to control the roots in the sewer system by pouring acid into the sewerlines to kill the roots and by using a mechanical root cutter. Timmons explained that if the City does not try to control the root masses, the roots can continue to grow until they form an obstruction and block the sewer main.

Timmons testified that he is not aware of any industry standard, rule, or regulation which requires the City to foresee sewer backups or any industry standard, rule, or regulation which requires the City to prevent roots from invading the sewer system. Timmons was also not aware of any industry standard, rule, or regulation which required the City to determine when roots begin to invade a sewerline. Timmons was not aware of any industry standard, rule, or regulation that would indicate that the City's maintenance program prior to May 1996 was inadequate.

Smith testified that, as utilities superintendent, he is responsible for the maintenance program of the City's sewer system, including the sewer main located adjacent to the Desels' residence. Smith described the City's maintenance program prior to May 1996 as being on an "as-needed basis." That is, if one of the City's sewerlines backed up, the City would send someone out to clean the line. Smith said that the reasoning behind the "as-needed basis" was that the City could not predict when the backups were going to occur and that the City does not have the capability to monitor all of its sewerlines to determine when and where a blockage may occur. Smith was not aware of any industry standard, rule, or regulation which requires the City to conduct such monitoring. Smith further testified that a waste treatment operator is responsible for the day-to-day maintenance of the sewer system and that part of his job is to periodically check manholes to see if there is a problem that is cause for maintenance, such as flushing the line. Smith also testified that the City has its own engineer whom it consults regarding sewerline maintenance, construction, and operation. Smith testified that the only guidelines the City's engineer has provided regarding the operation and maintenance of the sewerlines are regular flushing and regular maintenance of the City's sewer mains.

Smith testified that he determined that the probable cause of the backup in question was roots in the main sewerline. Smith also stated that it was the City's responsibility to maintain the sewer mains in an operable condition and that the City has the responsibility to eliminate roots that block the sewerlines. Smith also agreed with Timmons' testimony that if the roots are allowed to grow, they will eventually block the sewerlines.

Smith testified that there are several possible courses of action the City can take to prevent sewer backups caused by root incursion into sewerlines. These include (1) treating the roots that get into the line with chemical treatments, such as acid; (2) using root saws to cut the roots that get into the lines; (3) regulating the planting of trees and shrubs adjacent to the sewerlines; and (4) replacing the present sewerlines with PVC pipe. Regulating the planting of trees and shrubs adjacent to the sewerlines and replacing the present sewerlines with PVC pipe are the only ways Smith knew to completely prevent roots from invading the sewer system. Smith testified that he was not aware of any industry standard, rule, or regulation which required the City to take either of these two actions to prevent roots from entering the sewerlines.

Smith also testified that he was not aware of any industry standard, rule, or regulation which required the City to treat roots in the sewerlines differently than it does, nor was he aware of any industry rule or regulation which would indicate that the City's policy prior to May 1996 with regard to the maintenance of the sewer main adjacent to the Desels' residence was improper or inadequate.

When called as a witness by the City, Smith agreed with Timmons' testimony that the City tries to flush all the sewerlines at least once a year. Smith further explained that the City flushes all the sewerlines once a year and some are flushed more frequently on an "as-needed basis," meaning that in some sewer mains, problems have developed over time and must be treated more frequently. Smith also testified that prior to the backup in May 1996, there was no reason to believe that the sewerline that caused the backup into the Desels' residence needed more treatment than once a year.

The trial court found that the City had a duty to maintain the sewerlines and that it breached that duty, and awarded the Desels $6,266.30. The amount of damages had been previously stipulated to by the parties in the event the trial court found the Desels were entitled to judgment.

## ASSIGNMENTS OF ERROR

The City assigns that the trial court erred (1) in finding in favor of the Desels and against the City, (2) in finding that the

Desels met their burden of proof in the absence of any evidence establishing the City's duty of care, and (3) in finding that the City failed to properly maintain the sewerline in the absence of any evidence establishing the City's duty of care.

## SCOPE OF REVIEW

█ In actions brought pursuant to the Act, the findings of the trial court will not be disturbed on appeal unless they are clearly wrong, and when determining the sufficiency of the evidence to sustain the verdict, it must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in favor of such party, and it is entitled to the benefit of every inference that can reasonably be deduced from the evidence. *Norman v. Ogallala Pub. Sch. Dist., ante* p. 184, 609 N.W.2d 338 (2000); *Baldwin v. City of Omaha, ante* p. 1, 607 N.W.2d 841 (2000).

## ANALYSIS

█ Ordinary negligence is defined as the doing of something that a reasonably careful person would not do under similar circumstances, or the failing to do something that a reasonably careful person would do under similar circumstances. *Bargmann v. Soll Oil Co.,* 253 Neb. 1018, 574 N.W.2d 478 (1998); *Traphagan v. Mid-America Traffic Marking,* 251 Neb. 143, 555 N.W.2d 778 (1996). A negligence action brought under the Act has the same elements as a negligence action against an individual. *Brandon v. County of Richardson,* 252 Neb. 839, 566 N.W.2d 776 (1997). In order to prevail in a negligence action, there must be a legal duty on the part of the defendant to protect the plaintiff from injury, a failure to discharge that duty, and damage proximately caused by the failure to discharge that duty. *Bargmann v. Soll Oil Co., supra*; *Gans v. Parkview Plaza Partnership,* 253 Neb. 373, 571 N.W.2d 261 (1997), *overruled on other grounds, Knoll v. Board of Regents,* 258 Neb. 1, 601 N.W.2d 757 (1999). In accordance with the foregoing rule and to prevail in their action against the City, the Desels had to prove that the City had a duty to maintain the sewer system, that the City breached its duty, and that the breach proximately caused the damage claimed by the Desels.

■ Negligence and the duty to use care do not exist in the abstract, but must be measured against a particular set of facts and circumstances. *Bargmann v. Soll Oil Co., supra; Collins v. Herman Nut & Supply Co.*, 195 Neb. 665, 240 N.W.2d 32 (1976).

■ Duty is a question of whether a defendant is under any obligation for the benefit of a particular plaintiff; in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk. *Bargmann v. Soll Oil Co., supra; Gans v. Parkview Plaza Partnership, supra.* The question of whether a legal duty exists for actionable negligence is a question of law dependent upon the facts in a particular situation. *Bargmann v. Soll Oil Co., supra; Gans v. Parkview Plaza Partnership, supra.*

The City concedes there was a duty, but claims the breach of that duty was not established because the Desels did not prove the standard of care. The City argues that the operation, care, and maintenance of a municipality's sewer system is not within the general knowledge of laypeople and that as such, the Desels were required to provide expert testimony as to the applicable standard of care. The City contends that because the Desels failed to offer such expert testimony, the Desels did not prove a prima facie case of negligence and that the trial court erred in finding that the City was negligent.

Although the Desels did not present any expert testimony as to the applicable standard of care, the Desels did present sufficient evidence for the trial court to find that the City breached its duty and was negligent. The City knew that the sewer main adjacent to the Desels' residence had recurring problems with backups. Timmons testified that from 1980 to 1993, there had been sewer backups once a year in the sewer main located adjacent to the Desels' residence and that from 1993 to 1996, there had been "more trouble with it," specifically, that the backups had occurred more than once a year. Timmons also testified that he has sewer backup problems at his residence, which is just downstream from the Desels, in the spring and fall. The record also contains the complaint report, filled out and signed by Smith, for the sewer backup that is the subject of this litigation. Under the "Follow-up Procedures or Comments" section of the report, it states in part, "2nd time in approx[imately] 6 months that had problem there."

Smith testified that the City had a duty to maintain the sewerlines in an operable condition. Smith also acknowledged that the duty included eliminating roots that blocked the sewerlines. Smith further testified that there are several possible courses of action the City can take to prevent sewerline backups caused by root incursion, which included acid treatments, cutting the roots, regulating the planting of trees and shrubs adjacent to the sewerlines, and replacing the present sewerlines with PVC pipe.

Smith testified that the City's maintenance program for the sewer system prior to May 1996 was on an "as-needed basis," meaning that when the City received a complaint of a backup, it would send someone out to clean the line. When called as a witness by the City, Smith testified that the City flushes all the sewerlines once a year and that some are flushed more frequently on an "as-needed basis," meaning that in some sewer mains, problems have developed over time and must be treated more frequently. Despite Timmons' testimony that there had been backups in the sewer main adjacent to the Desels' residence more than once a year in the past 3 years and Smith's testimony that these backups would be considered an established problem, Smith testified that he felt that a once-a-year maintenance of that particular line was sufficient. Despite the City's knowledge of the recurring backups on this particular sewerline and its knowledge of ways to treat or prevent root incursion into the sewerlines, the City did nothing and simply continued to maintain this line in the same manner it maintained the properly working lines, on an "as-needed basis."

If the City had taken any course of action to prevent backups in the sewer main adjacent to the Desels' residence, it would then become a subject of expert testimony as to whether or not the City's actions were reasonable under the circumstances. However, the City did not take any course of action to prevent backups in the sewer main adjacent to the Desels' residence. The City's failure to take any action when there were several courses of action available is not reasonable, and the trial court did not need an expert opinion in order to come to that conclusion.

The City knew there was a problem with the sewer main adjacent to the Desels' residence and knew of several alternative courses of action that were available to prevent sewer backups

caused by root incursion, yet it did nothing. The City breached its duty to maintain the lines in an operable condition. The trial court found that the City had a duty to maintain the sewerlines and that it breached that duty. We conclude that the trial court's findings were not clearly wrong.

## CONCLUSION

For the reasons stated herein, the decision of the trial court is affirmed.

AFFIRMED.