SHARLENE DRAKE, APPELLANT, V.
VIRGIL DRAKE ET AL., APPELLEES.
618 N.W.2d 650

Filed October 20, 2000. No. S-99-998.

Monte L. Neilan, of Huenergardt & Neilan, for appellant.

Sterling T. Huff and Michael J. Javoronok, of Michael J. Javoronok Law Firm, for appellees Cheyenne County, John Jenson, and John Does 31-40.

John F. Simmons, of Simmons, Olsen, Ediger, Selzer, Ferguson & Carney, P.C., for appellees Herbert L. Stevens, Village of Potter, and Rural Fire Protection District No. 4.

Stephen W. Kay, of Kay & Kay, for appellees Sidney Medical, Inc., Steve Long, Diana Tritt, Risa Kinder, and John Does 1-10.

Don Stenberg, Attorney General, and Hobert B. Rupe for appellee Nebraska State Patrol.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Sharlene Drake (Sharlene) appeals from an order of the Cheyenne County District Court which sustained the demurrers of all the defendants except Virgil Drake (Virgil) and dismissed her first and second amended petitions.

## SCOPE OF REVIEW

■ Whether a petition states a cause of action is a question of law, regarding which an appellate court has an obligation to reach a conclusion independent of that of the inferior court. *Brown v. Social Settlement Assn.*, 259 Neb. 390, 610 N.W.2d 9 (2000).

■ When reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept as true the legal conclusions of the pleader. *Id.*

## FACTS

The facts as alleged by Sharlene are that at about 5:45 a.m. on December 30, 1996, she was involved in a one-car accident in

which her husband, Virgil, was the driver. A passing motorist reported the accident using his cellular telephone. Around 6 a.m., an ambulance arrived accompanied by persons designated as "John Doe Defendants." An emergency response vehicle also arrived with defendant Herb Stevens and other persons designated as "John Doe Defendants." At 6:03 a.m., a second ambulance arrived accompanied by defendants Steve Long, Diana Tritt, Risa Kinder, and others designated as "John Doe Defendants." John Jenson and certain "John Doe Defendants" also arrived in a Cheyenne County Sheriff's Department vehicle at that time.

Kinder, Jenson, and two "John Doe Defendants" from the Village of Potter and Rural Fire Protection District No. 4 questioned Virgil regarding undiscovered victims of the accident. Sharlene did not allege any response made by Virgil.

The passing motorist also telephoned Sharlene's mother and told her that Virgil was the only victim found. Sharlene's mother then called Sharlene's sister, who in turn called the Nebraska State Patrol and requested assistance in locating Sharlene. The State Patrol operator responded that the Cheyenne County Sheriff's Department, not the State Patrol, was handling the accident.

One ambulance transported Virgil, but the other left the accident scene without a patient because Sharlene had not yet been discovered. For about 30 minutes, Sharlene remained undiscovered in a ditch approximately 20 feet from where Virgil had been located. She was eventually found, and the second ambulance then returned to the scene around 6:54 a.m. and transported Sharlene to a hospital. Sharlene suffered an "anoxic/hypoxic brain injury with associated complications." She was released from institutional care on August 16, 1997, but continued to require constant care and supervision.

Sharlene alleged that at all times relevant, the defendants Long, Tritt, Kinder, and John Does 1 through 10 were acting as the servants, agents, or employees of Sidney Medical, Inc.; that the defendants Stevens, John Does 11 through 20, and John Does 21 through 30 were acting as the servants, agents, or employees of the defendants Village of Potter and Rural Fire Protection District No. 4; that Jenson and John Does 31 through

40 were acting as the servants, agents, or employees of Cheyenne County; and that John Does 41 through 50 were acting as the servants, agents, or employees of the State Patrol in furtherance of its purposes.

She alleged the timely filing of a claim pursuant to the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1997), and the refusal of the appropriate political subdivisions to make a final disposition of her claim. She also alleged the timely filing of a claim pursuant to the State Tort Claims Act, Neb. Rev. Stat. § 81-8,209 et seq. (Reissue 1996), and the refusal of the State to make a final disposition of her claim.

Sharlene alleged that the State Patrol could have and should have deployed personnel to the crash scene so as to hasten her discovery and should have and could have communicated information received from her sister to other defendants at the crash scene, but that they failed to do so.

Sharlene alleged that Cheyenne County, Jenson, John Does 31 through 40, the State Patrol, and John Does 41 through 50 owed her a duty to use care in timely rendering medical assistance, timely discovering victims, timely conducting a proper physical search, timely and properly evaluating evidence indicating the need to physically search for victims, timely establishing an adequate command structure, and adequately coordinating the rescue effort. She alleged that the defendants Sidney Medical, Long, Tritt, Kinder, John Does 1 through 10, the Village of Potter, John Does 11 through 20, Rural Fire Protection District No. 4, Stevens, and John Does 21 through 30 owed her a duty to refrain from grossly negligent actions and inactions in timely rendering medical assistance, timely discovering victims, timely conducting a proper physical search, timely and properly evaluating evidence indicating the need to physically search for such victims, timely establishing an adequate command structure, and adequately coordinating the rescue effort. Sharlene alleged that these defendants were acting pursuant to certain preexisting legal duties and were not acting gratuitously within the meaning of Neb. Rev. Stat. § 25-21,186 (Reissue 1995) and that the defendants were performing ministerial activities at the operational level, none of which amounted to a permissible exercise of public policy judgment.

She alleged that the Village of Potter and Rural Fire Protection District No. 4 were public entities which maintained private liability insurance at public expense and that the immunity set forth in Neb. Rev. Stat. § 35-107 (Reissue 1998) was inapplicable to public entities which maintain such liability insurance.

She alleged that Cheyenne County, Jenson, and John Does 31 through 40 were in privity with her by virtue of responding to the crash scene, which action constituted an explicit assurance of protection upon which she relied and an assumption of the duty alleged. She alleged that the State Patrol and John Does 41 through 50 were in privity with her by virtue of engaging in the conversation with her sister that constituted an explicit assurance of protection upon which she relied.

She alleged that the defendants were negligent or grossly negligent in failing to perform their duties and that such negligence or gross negligence was a concurrent proximate cause of exacerbating her injuries.

These defendants demurred on the ground that no cause of action had been stated. The trial court sustained the demurrers, concluding that there was no reasonable possibility that Sharlene could cure the defects by amendment and dismissed her petitions as to these defendants. As mandated by Neb. Rev. Stat. § 25-705(6) (Cum. Supp. 1998), the court determined there was no just reason for delay and expressly directed the entry of a judgment in favor of all defendants other than Virgil.

## ASSIGNMENTS OF ERROR

Sharlene assigns as error the trial court's sustaining of the demurrers on the ground that the operative petitions did not state a cause of action.

## ANALYSIS

In this case, the scope of our inquiry is whether the facts pled, together with the reasonable inferences that may be drawn therefrom, state a cause of action. A cause of action consists of the fact or facts which give one a right to judicial relief against another. *Bargmann v. State*, 257 Neb. 766, 600 N.W.2d 797 (1999). In order to state a cause of action, one must allege

events, acts, and things done or omitted which show a legal liability on the part of the defendant to the plaintiff. *Billups v. Scott*, 253 Neb. 287, 571 N.W.2d 603 (1997).

 A negligence action brought under the Political Subdivisions Tort Claims Act has the same elements as a negligence action against an individual, i.e., duty, breach of duty, causation, and damages. *Brandon v. County of Richardson*, 252 Neb. 839, 566 N.W.2d 776 (1997). The threshold inquiry in any negligence action is whether the defendant owed the plaintiff a duty. *Sharkey v. Board of Regents, ante* p. 166, 615 N.W.2d 889 (2000). Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Id.*

 In order for Sharlene to set forth a cause of action, she must set forth facts that establish that there was a duty owed by the defendants to Sharlene. Since the trial court concluded that Sharlene could not cure the defects by amendment and therefore dismissed the petitions, we also consider whether Sharlene could amend the petitions to state a cause of action. If, upon the sustainment of a demurrer, it is clear that no reasonable possibility exists that an amendment will correct a pleading defect, leave to amend need not be granted. *Prokop v. Hoch*, 258 Neb. 1009, 607 N.W.2d 535 (2000). Before error can be predicated upon the refusal of a trial court to permit an amendment to a petition after a demurrer is sustained, the record must show that, under the circumstances, the ruling of the court was an abuse of discretion. *Thrift Mart v. State Farm Fire & Cas. Co.*, 251 Neb. 448, 558 N.W.2d 531 (1997).

For purposes of our analysis, we will consider each group of defendants separately in order to determine whether Sharlene has stated a cause of action as to that group.

CHEYENNE COUNTY, JENSON, AND
JOHN DOES 31 THROUGH 40

In summary, Sharlene alleged that the Cheyenne County Sheriff's Department arrived at the accident scene with certain defendants and that they were negligent in failing to timely locate her and render medical assistance to her. The defendants demurred on the basis that the trial court had no jurisdiction over the persons of the defendants or the subject of the action and

that she did not allege facts sufficient to constitute a cause of action. The court sustained the demurrer on the ground that Sharlene did not state a cause of action as to these defendants.

The question is whether Jenson, as Cheyenne County's agent, owed a duty of care to Sharlene when he arrived at the scene of the accident. In *Maple v. City of Omaha*, 222 Neb. 293, 384 N.W.2d 254 (1986), we concluded that the "public duty doctrine" had no place in Nebraska law. The public duty doctrine provided that a government official or employee owed no duty of care to the general public in the absence of an undertaking of a special or private duty. See *id.* In rejecting the public duty doctrine, we adopted the rationale of the Arizona Supreme Court in *Ryan v. State*, 134 Ariz. 308, 656 P.2d 597 (1982), that " 'the parameters of duty owed by the state will ordinarily be coextensive with those owed by others.' " *Maple*, 222 Neb. at 300, 384 N.W.2d at 260. We deemed this to be consistent with the decision of the Legislature, via the Political Subdivisions Tort Claims Act, to hold a political subdivision liable to an injured party for the negligence of its employees in the same manner that a private person would be liable to such a claimant, with certain exceptions. See *Maple v. City of Omaha, supra.*

Thus, there is no requirement that the negligent act complained of be performed by a government employee in furtherance of a private duty owed to the claimant as opposed to a duty owed to the claimant and the public generally. See *id.* We do not engage in a special duty-general duty analysis of sovereign immunity, but it is still necessary for the claimant, in order to recover from a political subdivision, to prove that a duty was owed to him or her, that the duty was breached, and that an injury was proximately caused by that breach. See *id.*

Relying on *Hamilton v. City of Omaha*, 243 Neb. 253, 498 N.W.2d 555 (1993), Jenson claims that he had no specific duty to protect Sharlene. The present case is distinguished from our holdings in *Hamilton* and *Brandon v. County of Richardson*, 252 Neb. 839, 566 N.W.2d 776 (1997). Both *Hamilton* and *Brandon* involved harm caused by the criminal conduct of third persons. In *Hamilton*, we noted that under general tort principles, there was no duty to control the conduct of a third person as to prevent him from causing physical harm to another unless (1) a spe-

cial relationship existed between the actor and the third person which imposed a duty upon the actor to control the third person's conduct or (2) a special relationship existed between the actor and the other person which gave to the other a right of protection. In *Brandon*, we concluded that a special relationship was created that gave rise to the duty of law enforcement officers to protect the victim after she reported a sexual assault to the police and offered to aid in the prosecution of the suspects.

Jenson's reliance on *Hamilton* for his argument that he had no specific duty to protect Sharlene is misplaced. Sharlene does not allege that Jenson had a duty to protect her from the criminal action of third parties. The duty and breach alleged by Sharlene as to Jenson do not concern any failure to control the conduct of a third person. Rather, she alleged specific negligence on Jenson's part in conducting his investigation in a manner that exacerbated her injuries. To establish that a duty of care was owed, it was not necessary for Sharlene to establish a special relationship between a police department and herself that would set her apart from the general public, nor was it necessary to establish that there were explicit assurances of protection that gave rise to reliance on the part of Sharlene.

Therefore, Jenson and his principal, Cheyenne County, are subject to a claim of negligence in the same manner that a private person would be liable to such claimant. Sharlene must allege that a duty was owed to her, that the duty was breached, and that an injury was proximately caused by that breach. Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Sharkey v. Board of Regents, ante* p. 166, 615 N.W.2d 889 (2000).

Duty is a question of whether a defendant is under any obligation for the benefit of a particular plaintiff; in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in light of the apparent risk. *Desel v. City of Wood River*, 259 Neb. 1040, 614 N.W.2d 313 (2000). Because we are dealing with a demurrer for failure to state a cause of action, we must look for that duty in the context of a narrative of events, acts, and things done or omitted which show a legal liability on the part of the defendant to the plaintiff. See *Billups v. Scott*, 253 Neb. 287, 571 N.W.2d 603 (1997).

In her second amended petition, Sharlene alleged that Jenson, as well as Cheyenne County, owed her a duty of due care in timely rendering medical assistance to victims such as Sharlene, timely discovering victims at the crash scene, timely conducting a proper physical search for victims, timely and properly evaluating evidence indicating the need to physically search for victims, timely establishing an adequate command structure at the crash scene, and adequately coordinating the rescue effort.

A factor in establishing a defendant's duty is the foreseeability of risk. *Sacco v. Carothers*, 257 Neb. 672, 601 N.W.2d 493 (1999). Foreseeability, in the duty context, is a legal question for the court. *Knoll v. Board of Regents*, 258 Neb. 1, 601 N.W.2d 757 (1999). This is consistent with the oft-cited decision of Chief Justice Cardozo in the landmark case of *Palsgraf v. Long Island R. R. Co.*, 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928): "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension."

Thus, whether Jenson owed Sharlene a duty is determined by whether the risk of harm to Sharlene by a negligent accident investigation was reasonably foreseeable. Immobilized accident victims are in precarious positions and are completely dependent on the skill and care of investigating officers and rescue personnel for their lives and safety. A seriously injured and undiscovered victim of an automobile accident is foreseeably endangered by an unreasonable accident investigation.

We therefore conclude that Sharlene has sufficiently alleged that Jenson owed her a general duty of due care in conducting the accident investigation. The duty owed is to conform to the legal standard of reasonable conduct in light of the apparent risk, the relevant conduct being the accident investigation.

Jenson claims immunity under § 25-21,186, which provides:

No person who renders emergency care at the scene of an accident or other emergency gratuitously, shall be held liable for any civil damages as a result of any act or omission by such person in rendering the emergency care or as a result of any act or failure to act to provide or arrange for medical treatment or care for the injured person.

We conclude this section is inapplicable. Certain courts have held that police officers who have a duty to provide emergency care are not insulated by "Good Samaritan statutes" from liability for injuries which their actions caused to those being assisted. See, *Flynn v. U.S.*, 681 F. Supp. 1500 (D. Utah 1988), *aff'd in part, and in part vacated and remanded on other grounds* 902 F.2d 1524 (10th Cir. 1990); *Deal v. Kearney*, 851 P.2d 1353 (Alaska 1993); *Clayton v. Kelly*, 183 Ga. App. 45, 357 S.E.2d 865 (1987); *Praet v. Borough of Sayreville*, 218 N.J. Super. 218, 527 A.2d 486 (1987). Section 25-21,186 describes care that is rendered "gratuitously." We conclude that § 25-21,186 does not apply to Jenson because his conduct was not gratuitous.

Jenson also asserts § 13-910(10) as a basis for immunity. Section 13-910(10) provides for immunity by exempting from the Political Subdivisions Tort Claims Act "[a]ny claim arising out of snow or ice conditions or other temporary conditions caused by nature on any highway . . . or other public place due to weather conditions." Jenson argues that darkness is a temporary condition caused by nature. We find this section inapplicable in that mere darkness is not a temporary condition *due to weather* contemplated by § 13-910(10).

Thus, we conclude that the trial court erred in sustaining the demurrers of Cheyenne County, Jenson, and John Does 31 through 40. Whether these defendants breached the duty is a question for the finder of fact.

### Nebraska State Patrol and John Does 41 Through 50

Sharlene alleged that since the State Patrol and John Does 41 through 50 were informed that she was an undiscovered victim of the accident, the State Patrol was required to proceed to the accident scene or at least forward the information on to those at the scene. Instead, the State Patrol advised Sharlene's sister that it was not handling the accident and that the Cheyenne County Sheriff's Department was on site.

The State Patrol argues that it owed no duty to rescue Sharlene and that she failed to allege any duty owed to her by the State Patrol. Sharlene did not allege that she was in contact

with the State Patrol or its officers or employees, nor did she claim the State Patrol made any promises to respond to the call from her sister. Rather, she claimed that the State Patrol was negligent in failing to respond reasonably to the call from her sister.

The issue is whether a general duty of due care was established when the State Patrol was informed of Sharlene's situation. We conclude that Sharlene has sufficiently alleged a duty of care owed to her by the State Patrol.

Sharlene alleged that the State Patrol had the same duties as Cheyenne County and Jenson. She additionally alleged that the State Patrol could have and should have deployed personnel to the crash scene so as to hasten her discovery and that the State Patrol could have and should have notified other defendants at the crash scene via radio or other means of telecommunication. Sharlene essentially asserts that it was unreasonable for the State Patrol operator to answer the call and yet refuse to provide any assistance and that it would have been reasonable for the operator to at least inform the investigating deputy or rescue personnel that Sharlene was an undiscovered victim at the accident scene.

As previously stated, a factor in establishing the defendant's duty is the foreseeability of the risk. *Sacco v. Carothers*, 257 Neb. 672, 601 N.W.2d 493 (1999). Application of the reasonable foreseeability standard to the case at bar shows that the State Patrol owed a duty to Sharlene to respond reasonably to the call from her sister. Ordinary negligence is defined as the doing of something that a reasonably careful person would not do under similar circumstances or the failing to do something that a reasonably careful person would do under similar circumstances. *Desel v. City of Wood River*, 259 Neb. 1040, 614 N.W.2d 313 (2000). Whether the State Patrol breached such duty under the circumstances is a question of fact we do not decide.

We conclude, however, that Sharlene did not establish that the State Patrol had a duty to rescue her. Her allegations of privity and reliance upon assurances of protection are based upon the telephone conversation between the State Patrol and her sister. Sharlene alleged that her sister was told by the State Patrol that

the Cheyenne County Sheriff's Department was handling the accident. This allegation rebuts any claim of dependence upon the State Patrol that might create a duty to rescue.

In summary, we conclude that Sharlene has alleged a cause of action against the State Patrol based on the alleged duty of care owed in responding to her sister's telephone call. The trial court erred in sustaining the State Patrol's demurrer as to this duty.

### STEVENS, VILLAGE OF POTTER, RURAL FIRE PROTECTION DISTRICT NO. 4, AND JOHN DOES 11 THROUGH 30

Sharlene alleged that Stevens was an employee of the Village of Potter and Rural Fire Protection District No. 4 and that he responded to the accident. In summary, she contends that the defendants were grossly negligent in failing to timely find her at the accident.

Section 35-107 provides:

> No member of a volunteer fire department or of a volunteer first-aid, rescue, or emergency squad which provides emergency public first-aid and rescue services shall be liable in any civil action to respond in damages as a result of his acts of commission or omission arising out of and in the course of his rendering in good faith any such services . . . .

As this court recognized in *Lawry v. County of Sarpy*, 254 Neb. 193, 575 N.W.2d 605 (1998), the distinction between an exception to a grant of immunity and a waiver of immunity will impact the propriety of a demurrer. Here, immunity is by statute. In order to successfully invoke subject matter jurisdiction, a plaintiff must allege facts which show either that the general immunity does not apply or that the actions fall within the exceptions set forth within the general immunity statute. See *id.* If the petition fails to sufficiently plead such facts, the petition is subject to a demurrer for lack of subject matter jurisdiction. *Id.* Section 35-107 is a general grant of immunity. Therefore, as required by *Lawry*, Sharlene must allege facts which show that § 35-107 does not apply or that the cause of action as alleged falls within one of its exceptions.

Sharlene alleged that the immunity conferred by § 35-107 does not apply to public entities which maintain pri-

vate liability insurance at public expense. We disagree. The existence or nonexistence of liability insurance is not a condition for immunity, and we will not read into a statute an element not required by the plain meaning of the act. See *Johnson v. Vitek,* 205 Neb. 745, 290 N.W.2d 190 (1980). It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language. See *Father Flanagan's Boys Home v. Dept. of Soc. Servs.,* 255 Neb. 303, 583 N.W.2d 774 (1998). Therefore, Sharlene has not successfully pled that the statutory grant of immunity did not apply.

The general grant of immunity provided by § 35-107 is subject to the exception of damage caused by a willful or wanton act of commission or omission. Sharlene has alleged these defendants were grossly negligent. Gross negligence is great or excessive negligence, which indicates the absence of even slight care in the performance of a duty. *Coburn v. Reiser,* 254 Neb. 495, 577 N.W.2d 289 (1998). Since Sharlene could have alleged "willful and wanton" negligence, for purposes of our discussion, we will analyze the phrase "grossly negligent" in terms of willful and wanton negligence, since that is the language of the statutory exception.

In *Guenther v. Allgire,* 228 Neb. 425, 428-29, 422 N.W.2d 782, 785 (1988), we stated:

> In order for an action to be willful or wanton, the evidence must prove that a defendant had *actual* knowledge that a danger existed and that the defendant *intentionally* failed to act to prevent harm which was reasonably likely to result. The term imparts knowledge and consciousness that injury is likely to result from the act done or the omission to act, and a constructive intention as to the consequences. . . .

> To constitute willful negligence the act done or omitted must be intended or must involve such reckless disregard of security and right as to imply bad faith. Wanton negligence has been said to be doing or failing to do an act with reckless indifference to the consequences and with consciousness that the act or omission would probably cause serious injury.

(Citation omitted.)

Sharlene alleged that a better search should have been made by the defendants. Her allegation that the defendants were grossly negligent is a legal conclusion. Her allegations do not allege that the defendants intentionally failed to act or that their actions involved such reckless disregard of security as to imply bad faith. Nor does she allege that the defendants acted with reckless indifference to the consequences and with consciousness that the act or omission would probably cause serious injury. When reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept as true the legal conclusions of the pleader. *Brown v. Social Settlement Assn.*, 259 Neb. 390, 610 N.W.2d 9 (2000). We cannot infer that the defendants had actual knowledge that Sharlene was undiscovered or that they then intentionally failed to act or acted in reckless disregard to the consequences. Therefore, Sharlene has not set forth facts that would lead to a determination that the defendants' conduct was willful and wanton as defined in *Guenther*. We conclude that the trial court did not abuse its discretion in dismissing her petition as to these defendants.

In *Wicker v. City of Ord*, 233 Neb. 705, 447 N.W.2d 628 (1989), we held that the immunity conferred upon ambulance attendants by Neb. Rev. Stat. § 71-5111 (Reissue 1986) (which has since been repealed and replaced by Neb. Rev. Stat. § 71-5194 (Cum. Supp. 1998)) also immunizes the city or other entity with whom those individuals might be in an agency relationship. Sharlene alleged that Stevens was a servant, agent, or employee of the Village of Potter and Rural Fire Protection District No. 4. The Village of Potter and Rural Fire Protection District No. 4 have no other connection to the accident other than through the alleged agency of Stevens. Thus, Stevens' immunity extends to those defendants as well.

 ▆ Sharlene did not successfully invoke the subject matter jurisdiction of the trial court as to Stevens or the Village of Potter and Rural Fire Protection District No. 4. An order sustaining a demurrer will be affirmed if any one of the grounds on which it was asserted is well taken. *Lawry v. County of Sarpy*, 254 Neb. 193, 575 N.W.2d 605 (1998). Since the demurrer also

asserted a lack of jurisdiction, the trial court properly sustained the demurrer as to Stevens, the Village of Potter, and Rural Fire Protection District No. 4.

### SIDNEY MEDICAL, LONG, TRITT, KINDER, AND JOHN DOES 1 THROUGH 10

Sharlene alleged that Sidney Medical, Long, Tritt, Kinder, and John Does 1 through 10 were grossly negligent in failing to timely discover her at the scene of the accident.

Section 71-5111 (Reissue 1996), which was in effect at the time the alleged negligence occurred, provided: "No certified ambulance attendant [or] emergency medical technician . . . shall be liable in any civil action to respond in damages as a result of his or her acts of commission or omission arising out of and in the course of his or her rendering in good faith any such service." The term "ambulance attendant" was defined as "an individual trained or qualified to provide for, or any other individual who provides for, the care of patients while such patients are being transported in an ambulance." Neb. Rev. Stat. § 71-5102(3) (Reissue 1996). As previously recognized, we stated in *Wicker* that the immunity provided by the then applicable § 71-5111 also shielded the principals from liability to the same extent that it shielded the agent-attendants.

Section 71-5111 does not grant immunity to persons "causing damage or injury by his or her willful, wanton, or grossly negligent act of commission or omission." Sharlene's allegation that these defendants were grossly negligent is a legal conclusion, and she does not set forth facts that would lead to a determination that the defendants' conduct was either willful and wanton or grossly negligent. As we discussed in *Guenther v. Allgire*, 228 Neb. 425, 422 N.W.2d 782 (1988), in order for an action to be willful and wanton, the evidence must prove that the defendant had actual knowledge that a danger existed and that the defendant intentionally failed to act to prevent harm which was reasonably likely to result.

To constitute willful negligence, the act done or omitted must be intended and must involve such reckless disregard of security and right as to imply bad faith. There is no allegation that these defendants knew that Sharlene was a passenger in the vehicle

and intentionally failed to search for or find her. As noted earlier, gross negligence is great or excessive negligence, which indicates the absence of even slight care in the performance of a duty. See *Coburn v. Reiser*, 254 Neb. 495, 577 N.W.2d 289 (1998). None of the facts alleged by Sharlene suggest the absence of even slight care; indeed, the alleged fact that the defendants questioned Virgil regarding other accident victims indicates at least slight care. Sharlene has not established that § 71-5111 does not apply or that this case falls within an exception to the immunity which § 71-5111 provides to Sidney Medical, Long, Tritt, Kinder, and John Does 1 through 10.

We conclude that Sharlene did not successfully invoke the subject matter jurisdiction of the trial court and that the court did not abuse its discretion in dismissing the petition and refusing to allow Sharlene to amend her petition as to these defendants. See *Lawry v. County of Sarpy*, 254 Neb. 193, 575 N.W.2d 605 (1998).

## CONCLUSION

Sharlene has failed to state a cause of action against the defendants Stevens, Village of Potter, Rural Fire Protection District No. 4, Sidney Medical, Long, Tritt, Kinder, and John Does 1 through 30. For the reasons set forth herein, we affirm the judgment of the trial court and find that it did not abuse its discretion in refusing to allow Sharlene to amend her petitions as to these defendants.

However, the trial court erred in sustaining the demurrers as to the defendants Nebraska State Patrol, Cheyenne County, Jenson, and John Does 31 through 50. We therefore reverse the judgment of the trial court and remand the cause for further proceedings as to these defendants.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.