DOUG DETMER, AS GUARDIAN AND NEXT FRIEND OF
LEANNE DETMER, APPELLANT AND CROSS-APPELLEE, V.
DAWN BIXLER, APPELLEE AND CROSS-APPELLANT.
642 N.W.2d 170

Filed February 19, 2002.  No. A-00-606.

D. Kirk Wolgamott for appellant.

Susan I. Strong, of Plessman Law Offices, for appellee.

HANNON, INBODY, and CARLSON, Judges.

INBODY, Judge.

## I. INTRODUCTION

Doug Detmer (Detmer), as guardian and next friend of his minor daughter Leanne Detmer (Leanne), appeals the district court's grant of Dawn Bixler's motion for a directed verdict and the dismissal of his complaint. Bixler cross-appeals the district court's denial of her motion for an award of attorney fees. For the reasons recited herein, we affirm.

## II. STATEMENT OF FACTS

This case originated as an action by Detmer, on behalf of Leanne, against Leanne's minor boyfriend, Dallas Mills, and Mills' mother, Bixler. Leanne and Mills had engaged in consensual sexual intercourse when 16 years of age, which resulted in Leanne's becoming pregnant, which pregnancy was subsequently terminated by an abortion. Detmer's petition alleged that Bixler knew that Leanne and Mills were having sexual relations and that her negligent failure to properly supervise, control, and advise Mills or inform Leanne's parents of the sexual activities resulted

in personal, bodily, psychological, and emotional damage to Leanne, including medical expenses. The claim against Mills was dismissed on a motion for summary judgment because the acts of Leanne and Mills were consensual. The claim against Bixler proceeded to a jury trial held on February 24 and 25, 1999.

At trial, Leanne's mother, Sharon Detmer, testified that Leanne began having emotional problems at approximately age 15 and was prescribed anti-anxiety medications and underwent counseling, both of which were continuing at the time of trial. In 1996, Leanne, then 16 years old, began dating Mills, who was also 16 years old. At some point in time after Leanne and Mills began dating, they began having sexual relations.

On April 1, 1997, Leanne learned that she was pregnant and informed her parents. After learning of Leanne's pregnancy, Bixler came to the Detmers' home on several occasions, attempting to take Leanne to Bixler's home. Leanne's pregnancy was terminated by abortion on April 9.

On April 10, 1997, Leanne was committed to Child and Adolescent Psychiatric Services (CAPS) at Lincoln General Hospital because she was very angry and violent and was continually attempting to run away to Bixler's home, she was threatening suicide, and Leanne's parents could not control her. Leanne was released from CAPS on April 15, but was readmitted on April 20 after she ran away to Bixler's home. She was released on April 25 and returned to live with her parents.

Detmer testified that expenses were incurred as a result of Leanne's pregnancy, including the expenses relating to the abortion bill, doctor bills, CAPS bills, and psychiatry and other counseling bills.

Leanne testified that she never told Bixler or her parents that she and Mills were engaging in sexual relations and that she was trying to keep it a secret from the adults. However, according to Leanne, Bixler talked to both her and Mills about the fact that they were sexually active. Leanne further testified that she and Mills engaged in sexual relations approximately 15 times and that the couple had intercourse at Bixler's home and her parents' home.

On February 25, 1999, Bixler moved for directed verdict at the close of Detmer's case, alleging that Detmer failed to prove

a prima facie case of negligence. Specifically, Bixler argued that Detmer failed to prove (1) that Bixler owed Leanne a duty; (2) that duty, if any, was breached by Bixler; or (3) that Leanne's injury was a proximate cause of Bixler's conduct. The district court granted Bixler's motion and dismissed Detmer's petition. Specifically, the court determined that since Leanne was a dependent minor child, the Detmers were responsible for Leanne's medical expenses and that consequently, Detmer did not have a cause of action against Bixler for the medical expenses. Further, the court determined that there was no evidence that any of Leanne's injuries were caused by any negligence of Bixler and that insufficient evidence had been adduced regarding Leanne's injuries.

On March 8, 1999, Detmer filed a timely motion for new trial. On March 15, Bixler filed a motion for attorney fees on the ground that the action was frivolous. On March 23, Detmer appealed the district court's grant of Bixler's motion for directed verdict and the dismissal of his complaint, which appeal was dismissed by this court for lack of jurisdiction. See *Detmer v. Bixler*, 8 Neb. App. lii (No. A-99-454, Oct. 6, 1999).

Back at the trial court, Detmer withdrew the motion for new trial, and on May 11, 2000, Bixler's motion for attorney fees was denied. On June 6, Detmer again appealed the district court's February 25, 1999, grant of Bixler's motion for directed verdict and dismissal of his complaint. Bixler has filed a cross-appeal alleging that the district court erred in denying her motion for attorney fees and costs.

### III. ASSIGNMENTS OF ERROR

Detmer's sole assignment of error is that the district court erred in granting Bixler's motion for directed verdict and dismissing his complaint. Bixler cross-appeals and assigns as error that the district court abused its discretion in denying her motion for attorney fees.

### IV. ANALYSIS

#### 1. JURISDICTION

Before addressing the merits of this appeal, we first address Bixler's claim that this court's summary dismissal of Detmer's

first appeal on jurisdictional grounds constitutes a judgment on the merits of Detmer's claims and that relitigation is barred pursuant to either res judicata or law of the case. Additionally, Bixler contends that Detmer's current appeal is untimely because Detmer's notice of appeal was not filed until June 6, 2000, which was more than 1 month after the court's February 25, 1999, grant of Bixler's motion for a directed verdict.

(a) Res Judicata or Law of Case

First, we address Bixler's claim that this court's summary dismissal of Detmer's first appeal operates to bar Detmer's second appeal pursuant to either res judicata or law of the case.

The doctrine of res judicata is based on the principle that a final judgment on the merits by a court of competent jurisdiction is conclusive upon the parties in any later litigation involving the same cause of action. *Acosta v. Seedorf Masonry, Inc.*, 253 Neb. 196, 569 N.W.2d 248 (1997); *Cole v. Wilson*, 10 Neb. App. 156, 627 N.W.2d 140 (2001). " 'Under the law-of-the-case doctrine, the holdings of the appellate court on questions presented to it in reviewing proceedings of the trial court become the law of the case; those holdings conclusively settle, for purposes of that litigation, all matters ruled upon, either expressly or by necessary implication.' " *Mondelli v. Kendel Homes Corp.*, 262 Neb. 263, 278, 631 N.W.2d 846, 859 (2001) (quoting *Hoiengs v. County of Adams*, 254 Neb. 64, 574 N.W.2d 498 (1998)).

On March 23, 1999, when Detmer filed the first notice of appeal regarding the grant of a directed verdict against him, there remained pending before the district court a motion for new trial. At that time, Neb. Rev. Stat. § 25-1912(2) (Cum. Supp. 1998) provided in part:

When any motion terminating the time for filing a notice of appeal is timely filed by any party, a notice of appeal filed before the court announces its decision upon the terminating motion shall have no effect, whether filed before or after the timely filing of the terminating motion. A new notice of appeal shall be filed within the prescribed time from the ruling on the motion.

Because there was a timely motion for new trial pending before the district court at the time that Detmer filed his first

notice of appeal, pursuant to § 25-1912(2), the appeal was premature and had no effect. Consequently, this court lacked jurisdiction over Detmer's first appeal, and it was summarily dismissed. This determination was not a decision on the merits, and thus, the second appeal filed by Detmer is not barred by res judicata or law of the case.

### (b) Timeliness of Instant Appeal

The next issue is whether Detmer's second notice of appeal in the instant case filed on June 6, 2000, purporting to appeal the district court's February 25, 1999, grant of Bixler's motion for directed verdict and dismissal of his complaint was timely. Bixler claims that Detmer's notice of appeal was filed more than 1 month after the February 25 grant of Bixler's motion for directed verdict and dismissal of his complaint and that thus, his appeal is untimely.

However, on March 15, 1999, Bixler filed a motion for attorney fees based on the ground that the action was frivolous, which motion was not ruled upon until May 11, 2000. In *In re Application of SID No. 384*, 256 Neb. 299, 589 N.W.2d 542 (1999), the Nebraska Supreme Court considered whether a district court's order in a condemnation of property case was a final, appealable order, absent a ruling on a pending motion for attorney fees. The court reasoned that because attorney fees are considered costs in condemnation proceedings and costs are considered part of the judgment, the order appealed from was not a final, appealable order due to the trial court's failure to rule on a motion for attorney fees which had been filed prior to the filing of the notice of appeal.

Similarly, pursuant to Neb. Rev. Stat. § 25-824(2) (Reissue 1995):

> Except as provided in subsections (5) and (6) of this section, in any civil action commenced or appealed in any court of record in this state, the court shall award as part of its judgment and in addition to any other costs otherwise assessed reasonable attorney's fees and court costs against any attorney or party who has brought or defended a civil action that alleges a claim or defense which a court determines is frivolous or made in bad faith.

Applied to the instant case, at the time Detmer voluntarily dismissed his motion for new trial, there still was a motion for attorney fees pending from March 15, 1999, which if allowed would be taxed as costs. Thus, the district court's order granting Bixler's motion for a directed verdict and dismissing Detmer's complaint had not disposed of the entire case and was not a final, appealable order until May 11, 2000, when the court ruled on Bixler's motion for attorney fees. Since Detmer filed his notice of appeal within 30 days of the court's May 11 ruling, his appeal is timely. We now proceed to consider the merits of this appeal.

## 2. DIRECTED VERDICT

Detmer contends that the district court erred in granting Bixler's motion for directed verdict and in dismissing his complaint.

In considering an appeal from an order granting a motion for a directed verdict at the close of the plaintiff's case, an appellate court must determine whether the cause of action was proved and in so doing must consider the plaintiff's evidence as true and give the plaintiff the benefit of reasonable conclusions deducible from that evidence. *King v. Crowell Memorial Home*, 261 Neb. 177, 622 N.W.2d 588 (2001); *Cole v. Loock*, 259 Neb. 292, 609 N.W.2d 354 (2000).

In order to maintain a negligence action, a plaintiff must prove duty, breach, proximate cause, and damages. *Divis v. Clarklift of Nebraska*, 256 Neb. 384, 590 N.W.2d 696 (1999); *Gerlach v. State*, 9 Neb. App. 806, 623 N.W.2d 1 (2000). The threshold inquiry in any negligence action is whether the defendant owed the plaintiff a duty. *Claypool v. Hibberd*, 261 Neb. 818, 626 N.W.2d 539 (2001); *Drake v. Drake*, 260 Neb. 530, 618 N.W.2d 650 (2000).

Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Struempler v. Estate of Kloepping*, 261 Neb. 832, 626 N.W.2d 564 (2001); *Claypool v. Hibberd, supra*; *Drake v. Drake, supra*; *Desel v. City of Wood River*, 259 Neb. 1040, 614 N.W.2d 313 (2000); *Ray v. Argos Corp.*, 259 Neb. 799, 612 N.W.2d 246 (2000). When reviewing questions of law, an appellate court has

an obligation to resolve the question independently of the conclusion reached by the trial court. *Struempler v. Estate of Kloepping, supra; Doksansky v. Norwest Bank Neb.*, 260 Neb. 100, 615 N.W.2d 104 (2000).

In *Schieffer v. Catholic Archdiocese of Omaha*, 244 Neb. 715, 508 N.W.2d 907 (1993), the plaintiff brought an action for damages against the Catholic Archdiocese of Omaha and her parish priest, with whom she had engaged in a sexual affair. The plaintiff argued that the archdiocese was negligent in failing to supervise the priest in connection with his pastoral duties when it knew or should have known of his past sexual affairs and by failing to remove the priest from his position when it had this knowledge.

In affirming the dismissal of the plaintiff's claims upon demurrer, the Nebraska Supreme Court found that the plaintiff's consent barred any recovery against the priest and that since the plaintiff had no tort claim against the priest individually, then the plaintiff likewise can have no cause of action against the archdiocese. In making this determination, the court quoted with approval from *Strock v. Presnell*, 38 Ohio St. 3d 207, 527 N.E.2d 1235 (1988): " '[A]n underlying requirement in actions for negligent supervision . . . is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer.' " *Schieffer v. Catholic Archdiocese of Omaha*, 244 Neb. at 723, 508 N.W.2d at 913.

We believe that in actions for negligent supervision, the rationale for the Nebraska Supreme Court's holding that absence of an underlying tort precludes recovery against an employer is equally applicable against other parties charged with negligent supervision.

In the instant case, Detmer alleged in his complaint that Bixler was negligent in supervising, controlling, and advising Mills so as to prevent injury to Leanne. In the instant case, at the time that the district court granted Mills' motion for summary judgment, the court determined that the sexual intercourse engaged in by Leanne and Mills was consensual, and this determination was not appealed. Thus, there has been a final determination by the district court that Leanne consented to the intercourse which

resulted in her pregnancy and that no tort claim existed against Mills. Because no tort claim existed against Mills for the underlying tort, it follows that Detmer likewise can have no cause of action against Bixler. Consequently, the district court properly granted Bixler's motion for directed verdict, and this assignment of error is without merit.

### 3. Bixler's Cross-Appeal

Bixler has cross-appealed, contending that the district court abused its discretion in denying her motion for attorney fees pursuant to § 25-824 on the basis that Detmer's action was frivolous.

■ A court may award attorney fees against an attorney or party if the court finds that the action brought by the attorney or party is frivolous or made in bad faith. § 25-824(2). As used in the context of awarding attorney fees in a frivolous action, "frivolous" connotes an improper motive or legal position so wholly without merit as to be ridiculous. *Blecha v. Blecha*, 257 Neb. 543, 599 N.W.2d 829 (1999). However, § 25-824(5) also provides that "[n]o attorney's fees or costs shall be assessed if a claim or defense was asserted by an attorney or party in a good faith attempt to establish a new theory of law in this state . . . ."

■ The standard of review on the trial court's determination of a request for sanctions under § 25-824 is whether the trial court abused its discretion. *Pipe & Piling Supplies v. Betterman & Katelman*, 8 Neb. App. 475, 596 N.W.2d 24 (1999). See *Malicky v. Heyen*, 251 Neb. 891, 560 N.W.2d 773 (1997).

In the present case, Detmer sought a court determination of whether a parent who knows that the parent's minor child is engaging in sexual relations with another minor child has a legal duty to supervise the child in order to prevent such activity. Thus, the case presented, if not a new theory of law, the expansion or clarification of existing negligence law. Although we have affirmed the district court's dismissal of Detmer's petition, merely losing one's case is not the test for an award of attorney fees, and said rejection does not necessarily mean that the action was pursued with improper motive or was so without merit as to be ridiculous. Therefore, based upon our de novo review of the record, we cannot say that the district court abused its discretion in denying Bixler's motion for attorney fees.

## V. CONCLUSION

For the reasons discussed above, we affirm the district court's grant of Bixler's motion for directed verdict and the denial of Bixler's motion for attorney fees.

AFFIRMED.